O’Connor, C.J.
{¶ 1} This matter is before us as a result of a motion for reconsideration filed by appellant, the state of Ohio.[1] Appellee, Rafael Gonzales, filed a memorandum opposing reconsideration.[2]
{¶ 2} In State v. Gonzales, 150 Ohio St.3d 261, 2016-Ohio-8319, 81 N.E.3d 405 (“Gonzales /”), the court determined that in prosecuting cocaine-possession offenses under R.C. 2925.11(C)(4)(b) through (f) involving mixed substances, the state must prove that the weight of the actual cocaine, excluding the weight of any filler materials, meets the statutory threshold.
{¶ 3} The state contends that Gonzales I was decided in error and that it is based upon inconsistent application of the principles of statutory construction. A majority of the court grants the state’s motion for reconsideration. We now hold that the entire “compound, mixture, preparation, or substance,” including any fillers that are part of the usable drug, must be considered for the purpose of determining the appropriate penalty for cocaine possession under R.C. 2925.11(C)(4). Accordingly, we vacate our decision in Gonzales I, answer the certified-eonflict question in the negative, and reverse the judgment of the Sixth District Court of Appeals.
ANALYSIS
{¶ 4} To interpret a statute, we must first look at its language to determine legislative intent. Provident Bank v. Wood, 36 Ohio St.2d 101, 105, 304 N.E.2d 378 (1973). When a statute’s meaning is clear and unambiguous, we apply the statute as written. Id. at 105-106. We must give effect to the words used, refraining from inserting or deleting words. Cleveland Elec. Illum. Co. v. Cleveland, 37 Ohio St.3d 50, 53-54, 524 N.E.2d 441 (1988). If a legislative definition is available, we construe the words of the statute accordingly. R.C. 1.42.
*278 {¶ 5} But “words in a statute do not exist in a vacuum.” D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 19. This means that “our attention should be directed beyond single phrases, and we should consider, in proper context, all words used by the General Assembly in drafting [the relevant statute] with a view to its place in the overall statutory scheme.” Id.
{¶ 6} If a statute is ambiguous, the court may consider the legislative history and the circumstances under which it was enacted, as well as the consequences of a particular construction, among other things. R.C. 1.49. And we must presume that the General Assembly intended the entire statute to achieve a result that is feasible of execution. R.C. 1.47.
{¶ 7} R.C. 2925.11(C)(4) describes the cocaine-possession offense: “If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine.” (Emphasis added.) The penalty sections of the statute then set forth increasing degrees of punishment depending on the weight of the cocaine possessed by an offender. R.C. 2925.11(C)(4)(a) through (f). Possession of any amount of the drug exceeding 5 grams is penalized more severely than a fifth-degree felony, id., and possession of an amount of the drug exceeding 100 grams is a first-degree felony, in which case the offender is also designated as a major drug offender and the court must impose a mandatory maximum prison term, id. at (C)(4)(f).[3]
{¶ 8} The question before us is what should be weighed to determine an offender’s penalty.
{¶ 9} Read as a whole, the plain language of R.C. 2925.11(C)(4)(b) through (f) penalizes an offender for the amount of cocaine possessed, and the amount of “cocaine” clearly encompasses the whole compound or preparation of cocaine, including fillers that are part of the usable drug.
{¶ 10} The statutory definition of “cocaine” includes a “salt, compound, derivative, or preparation” of a substance that is a cocaine salt or base cocaine. R.C. 2925.01(X)(3). See also R.C. 3719.41 (Schedule 11(A)(4)). This language is broad. The Sixth District concluded that the definition of “cocaine” does not include a mixture of cocaine and fillers. 2015-Ohio-461, 2015 WL 502263, at ¶ 45. But the statutory definition of cocaine plainly encompasses a compound or preparation that includes cocaine. And “compound” means “something (as a substance * * *) *279 that is formed by a union of * * * ingredients.” Webster’s Third New International Dictionary 466 (1986).
{¶ 11} Indeed, this is consistent with the nature of the cocaine used illegally in the United States, which is a compound of several ingredients:
[C]ocaine powder is derived by dissolving the coca paste in hydrochloric acid and water. To this mixture a potassium salt (potassium permanganate) is added. The potassium salt causes undesired substances to separate from the mixture. These substances are then discarded. Ammonia is added to the remaining solution, and a solid substance—the powder cocaine—separates from the solution. The powder cocaine is removed and allowed to dry. Prior to distribution, powder cocaine typically is “cut, ” or diluted, by adding * * * one or more adulterants: sugars, local anesthetics (e.g., benzocaine), other drugs, or other inert substances. Consequently, the purity level of powder cocaine may vary considerably.
(Emphasis added and footnotes omitted.) United States Sentencing Commission, Special Report to the Congress: Cocaine and Federal Sentencing Policy 12 (Feb. 1995), http://www.ussc.gov/research/congressional-reports/1995-report-congress-cocaine-and-federal-sentencing-policy (accessed Feb. 15, 2017). See also Ohio Substance Abuse Monitoring Network, Drug Abuse Trends in the Cleveland Region 81 (Jan.-June 2014), http://www.documentcloud.org/documents/1659531-drug-abuse-trends-in-the-cleveland-region.html# document/pl (accessed Feb. 15, 2017) (cocaine powder in the Cleveland area is cut with lidocaine, procaine, and levamisole, a livestock dewormer); Ohio Substance Abuse Monitoring Network, Drug Abuse Trends in the Columbus Region 102 (Jan.-June 2014), http:// mha.ohio.gov/Portals/0/assets/Research/OSAM-TRI/Columbus%20Jan% 202015.-pdf (accessed Feb. 15, 2017) (in the Columbus area, cocaine is cut with lidocaine, procaine, levamisole, baby laxatives or powder, and “anything that is white and powdered”).
{¶ 12} Importantly, the fillers, or adulterants, that are part of powder cocaine are not intended to be removed before consumption. Indeed, the fillers are an inherent part of powder cocaine. Thus, the common usage of the term “cocaine” is consistent with the statutory definition that a compound or preparation of cocaine is still cocaine. Accordingly, the total weight of the drug, including any fillers that are part of usable cocaine, should be weighed to determine the appropriate cocaine-possession penalty under the statute.
{¶ 13} Concluding otherwise would require us to insert the words “actual” or “pure” to describe the cocaine that is intended to be penalized by the statute. If the General Assembly had been concerned about purity, rather than total weight, *280 it would have said so. In our limited role of statutory interpretation, we must refrain from inserting words to achieve a particular result. Cleveland Elec. Illum. Co., 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus.
{¶ 14} Because we conclude that the statute is unambiguous, legislative history is not controlling here. However, contrary to what Justice Kennedy’s dissent asserts, even if the statute were ambiguous, a review of the legislative history and the circumstances under which the statute was enacted would support our conclusion.[4] The Ohio Legislative Service Commission’s analysis of Am.Sub.H.B. No. 86 (“H.B. 86”), which amended R.C. 2925.11(C)(4), explains that one purpose of the legislation was to eliminate the distinction that had existed between penalties for drug offenses involving crack cocaine and drug offenses involving powder cocaine and replace that distinction with a penalty for drug offenses “involving any type of cocaine.” (Emphasis added.) Ohio Legislative Service Commission, Am.Sub.H.B. 86 Final Analysis (“Final Analysis”) at 8, available at http://www.lsc.ohio.gov/analysesl29/ll-hb86-129.pdf (accessed Feb. 16, 2017).
{¶ 15} Moreover, introducing a purity weight requirement for drug offenses involving cocaine would have been a significant departure from the statutory scheme as it had existed and been applied prior to September 2011, the effective date of H.B. 86. But nowhere in the legislative analysis do the words “pure” or “purity” occur, and nowhere is there a description of the need for prosecutors to weigh the cocaine minus any fillers to determine the applicable penalty for cocaine possession. In fact, the Legislative Service Commission’s analysis explains that the drug-quantity threshold formerly used for cocaine that was not crack cocaine remained the basis for determining whether the major-drug-offender label should apply .“regardless of the form of the cocaine involved.” Final Analysis at 68.
{¶ 16} We recognize that H.B. 86 contained “the most significant amendments to criminal and prison law since [Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136] took effect in 1996.” Diroll, Ohio Criminal Sentencing Commission, H.B. 86 Summary: The 2011 Changes to Criminal and Juvenile Law, available at https:// www.sconet.state.oh.us/Boards/Sentencing/resources/summaries/HB86Summary. *281 pdf (accessed Feb. 16, 2017). In addition to equalizing penalties for crack and powder cocaine,[5] H.B. 86 raised theft thresholds, expanded diversion opportunities, lowered prison terms for certain drug crimes, limited prison time for low-level felonies, encouraged alternatives to prison, and provided mechanisms for shortened prison sentences, among other reforms. Knopp, Breaking the Cycle: Ohio Reentry Courts, 41 Ohio N.U.L.Rev. 737, 746 (2015). The legislation spelled out numerous approaches to achieve its goal of reducing the prison population.
{¶ 17} But Justice Kennedy’s suggestion in her dissent that H.B. 86 incorporated a requirement that the state must establish proof of the weight of “pure” cocaine in order to reduce the prison population is, at best, speculative. Dissenting opinion at ¶ 61. None of the varied legislative approaches in H.B. 86 included the requirement that the prosecution prove the amount of “pure” cocaine to determine the appropriate cocaine-possession penalty. To the contrary, the Legislative Service Commission’s analysis is clear that the amendments did not affect the preexisting statutory scheme except to eliminate the distinction between crack and powder cocaine and provide a “penalty for the offenses involving any type of cocaine.” Final Analysis at 65-66.
CONCLUSION
{¶ 18} Giving effect to the statute as a whole and to the intent of the legislature as expressed in the words of the statute, we conclude that the applicable offense level for cocaine possession under R.C, 2925.11(C)(4) is determined by the total *282 weight of the drug involved, including any fillers that are part of the usable drug. Thus, we answer the certified question in the negative, and we reverse the judgment of the Sixth District Court of Appeals.
Motion for reconsideration granted and judgment reversed.
O’Donnell, French, and DeWine, JJ., concur.
DeWine, J., concurs, with an opinion.
Fischer, J., concurs in part and dissents in part, with an opinion.
Kennedy, J., dissents, with an opinion.
O’Neill, J., dissents, with an opinion.

. Amicus curiae Ohio Prosecuting Attorneys Association supported appellant’s request for reconsideration.

. Amicus curiae Office of the Ohio Public Defender filed a memorandum opposing reconsideration.

. One hundred grams of powder cocaine is approximately 1,000 doses of powder cocaine for intranasal consumption. United States Department of Justice, Federal Cocaine Offenses: An Analysis of Crack and Powder Penalties (March 17, 2002), available at https://www.justice.gov/ archive/olp/pdf/crachL.powder2002.pdf (accessed Feb. 15, 2017).

. In fact, a short time after our decision in Gonzales I, legislation was proposed in the General Assembly to amend R.C. 2925.03 and 2925.11 “to provide that in determining the amount of cocaine for trafficking and possession offenses, it also includes a compound, mixture, preparation, or substance containing cocaine.” Title, Am.H.B. No. 4, as introduced in the 132d General Assembly, available at Ohio Legislature, House Bill 4, https://www.legislature.ohio.gov/legislation/Iegislation-summary?id=GA132-HB-4 (accessed Feb. 22, 2017). As unanimously passed by the House, Section 3 of that legislation states, “The General Assembly is aware of [Gonzales /]. It was not the intent of the General Assembly to require the State, in prosecuting cocaine offenses involving mixed substances, to prove that the weight of the cocaine meets the statutory threshold, excluding the weight of any filler materials used in the mixture.” Id.

. The equalization of the penalties for possession of crack and powder cocaine was driven in large part by the need to address the racial disparity in the drug-offender prison population, not by the need to address variances in cocaine purity. This critique of the two-tiered cocaine sentencing approach used prior to H.B. 86 has been widely observed:
Debates about the sentencing of crack possessors have been contentious for some time because of the disparity between the sentences applicable to crack offenders and those applicable to powder cocaine offenders in most jurisdictions, though crack and powder cocaine are simply different forms of the same drugs. This disparate treatment is usually discussed along racial lines and seen as a main contributor to racial disparities in imprisonment rates. For example, in its 2002 Report to Congress, the U.S. Sentencing Commission found that an “overwhelming majority” of crack offenders were black—91.4% in 1992 and 84.7% in 2000. Like the federal system, blacks have been disproportionately incarcerated in Ohio. The Ohio Office of Criminal Justice Services reported that at midyear 2005, Ohio incarcerated blacks at an alarming rate of 2,196 per 100,000 U.S. residents and incarcerated whites at a rate of 344 per 100,000 U.S. residents. Also similar to the federal system, Ohio law treats crack cocaine offenders much more harshly than it treats powder cocaine offenders.
(Footnotes omitted.) Exum, Sentencing, Drugs, and Prisons: A Lesson From Ohio, 42 U.Tol.L.Rev. 881, 886-887 (2011). See also Kimbrough v. United States, 552 U.S. 85, 98, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (describing the problems identified by the United States Sentencing Commission with the crack/powder sentencing disparity, including the perception that the system promoted unwarranted disparity based on race).