[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Pendleton*, Slip Opinion No. 2020-Ohio-6833.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6833

THE STATE OF OHIO, APPELLEE, *v*. PENDLETON, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Pendleton*, Slip Opinion No. 2020-Ohio-6833.]**

*Criminal law—Double jeopardy—A sentencing court may not impose greater punishment than the legislature intended—Imposing two punishments for trafficking based on a single mixture of drugs containing both heroin and fentanyl violates double-jeopardy protections when the total weight of the heroin is calculated as the total weight of the mixture and the total weight of the fentanyl is calculated as the total weight of the mixture, i.e., the total weight of a mixture containing multiple drugs cannot be used to satisfy the individual-weight element of each drug for sentencing purposes.*

(No. 2018-1348—Submitted January 8, 2020—Decided December 23, 2020.)

APPEAL from the Court of Appeals for Clark County, Nos. 2017-CA-9 and 2017-CA-17, 2018-Ohio-3199.

_____

**DONNELLY, J.**

**{¶ 1}** This discretionary appeal centers on two prison sentences that appellant, Kenny Pendleton, received related to 133.62 grams of powder containing detectable amounts of heroin and fentanyl; he was sentenced on a first-degree-felony conviction for trafficking in 133.62 grams of heroin, and he was separately sentenced on a second-degree-felony conviction for trafficking in 133.62 grams of fentanyl. The Second District Court of Appeals held that the General Assembly intended to separately punish an offender for trafficking in different types of drugs and that punishing trafficking in the same 133.62 grams twice did not violate the Double Jeopardy protections of the Ohio and United States Constitutions. We disagree, and we reverse the portion of the court of appeals' judgment before us, vacate the corresponding portion of Pendleton's sentence, and remand the cause to the trial court for resentencing.

## I. BACKGROUND

**{¶ 2}** On January 4, 2016, the Springfield police executed a search warrant at Pendleton's residence and seized guns and several bags of illicit substances. One bag contained a mixture of cocaine, heroin, and fentanyl; it weighed 49.67 grams. Two other bags contained a mixture of heroin and fentanyl; one weighed 83.17 grams and the other weighed 0.78 grams. Several bags contained only cocaine. Pendleton was charged with possession of and trafficking in heroin in an amount over 50 grams; possession of and trafficking in a schedule II drug (fentanyl) in an amount equal to or exceeding 100 grams; possession of and trafficking in cocaine;[1] and attendant firearm specifications. Pendleton's indictment also contained a charge for having weapons under disability, but the trial court ultimately dismissed that charge.

---

1. The amount of cocaine is not at issue in this appeal; during the pendency of Pendleton's proceedings, the state reduced the cocaine charges to fifth-degree-felony offenses pursuant to R.C. 2925.03(C)(4)(a) and 2925.11(C)(4)(a), neither of which contain a quantity element.

**{¶ 3}** The three bags of drugs that contained both heroin and fentanyl are at issue in this appeal. The combined weight of those bags was 133.62 grams. During Pendleton's jury trial, the state argued that because the bags contained a mixture of drugs, under Ohio law, the mixture constituted both 133.62 grams of heroin and 133.62 grams of fentanyl. The jury returned guilty verdicts on all charges and the firearm specifications. At Pendleton's sentencing hearing, the trial court merged the possession counts with their respective trafficking counts and merged all the firearm specifications for purposes of sentencing. The court rejected Pendleton's argument that the heroin and fentanyl convictions should merge for purposes of sentencing, noting that "different drug groups constitute different offenses and are therefore not allied offenses of similar import."

**{¶ 4}** The state elected to proceed to sentencing on the trafficking counts for each drug, and the trial court imposed consecutive prison terms of 11 years for trafficking in heroin in an amount over 50 grams, 8 years for trafficking in fentanyl in an amount over 100 grams, 1 year for trafficking in cocaine, and 1 year for the merged firearm specifications, for a total prison sentence of 21 years.

**{¶ 5}** In the court of appeals, Pendleton argued that his convictions for trafficking in heroin in an amount over 50 grams and trafficking in fentanyl in an amount over 100 grams were allied offenses of similar import that should have been merged for the purpose of sentencing because each was based on the same 133.62 grams of a mixture of drugs. The court of appeals rejected Pendleton's argument and affirmed his convictions and sentences.

**{¶ 6}** A majority of that court reasoned that the General Assembly intended to impose multiple punishments for the simultaneous trafficking in different drugs because trafficking in each drug was a distinct offense. 2018-Ohio-3199, ¶ 32. The dissenting judge, however, asserted that merger of Pendleton's heroin and fentanyl convictions was required because they were based on identical evidence. *Id*. at ¶ 60, 71. The dissenting judge argued that although the General Assembly intended

to separately punish the possession or trafficking in different types of drugs, there is no indication that the General Assembly intended for the combined weight of two drugs to satisfy the individual weight element of each separate drug charge. *Id.* at ¶ 72. Despite their opposing conclusions, both opinions expressed concerns with the implications of characterizing the same 133.62 grams of powder as simultaneously constituting 133.62 grams of heroin mixed with fillers and 133.62 grams of fentanyl mixed with fillers. *Id.* at ¶ 58, 60, 72.

{¶ 7} We accepted one proposition of law for review:

A criminal defendant's right against Double Jeopardy as guaranteed by the United States and Ohio Constitutions is violated when he is convicted for two drug trafficking offenses where the drugs in each offense are calculated as filler for the other offense.

*See* 154 Ohio St.3d 1443, 2018-Ohio-4962, 113 N.E.3d 551.

## II. ANALYSIS

{¶ 8} The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution prohibit a criminal defendant from being tried twice for the same offense. This prohibition applies to successive prosecutions as well as to multiple punishments for the same offense. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10. Regarding multiple punishments for the same offense, the Double Jeopardy Clause prohibits "the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). When determining whether multiple punishments may be imposed for the same offense, our focus is on legislative intent. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 10.

**{¶ 9}** In *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 16, we noted that R.C. 2941.25 was enacted so that if " 'the same conduct by the defendant technically amounts to two or more related offenses, he should be guilty of only one offense," and conversely, that if "his conduct amounts to two or more different offenses, or to two or more offenses of the same kind committed at different times or with a separate evil purpose as to each, then it should be possible to convict him of all such crimes.' " *Id.*, quoting Ohio Legislative Service Commission, Proposed Ohio Criminal Code (Mar.1971) 308.

**{¶ 10}** R.C. 2941.25 provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶ 11}** The General Assembly's test in R.C. 2941.25 for determining whether two offenses are allied offenses of similar import can help a court construe whether the legislature intended to allow multiple punishments for the same conduct. *Brown* at ¶ 37. But if the General Assembly's intent is clear from the language of the statute creating the offense, there is no need to resort to the test provided in R.C. 2941.25. *Id.*

{¶ 12} Although the appellate court mentioned the two-tiered test in R.C. 2941.25, it focused instead on what it believed to be the plain meaning of R.C. 2925.03. We agree that the resolution of this appeal does not require us to apply R.C. 2941.25, because the intent of the General Assembly is clear on the face of R.C. 2925.03. By its plain terms, R.C. 2925.03 does not allow the weight of a mixture of drugs to be multiplied by the number of controlled substances detected in the mixture for the purpose of supporting multiple punishments. Our discussion in *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419 ("*Gonzales II*") of the weight element of drug offenses is illustrative.

{¶ 13} In *Gonzales II*, we reconsidered and vacated our decision in *State v. Gonzales*, 150 Ohio St.3d 261, 2016-Ohio-8319, 81 N.E.3d 405 ("*Gonzales I*"), which held that the weight element of a cocaine-possession charge could be established only by proving the weight of pure cocaine and excluding the weight of any filler materials in a mixture. We explained in *Gonzales II* at ¶ 9 that the different bulk-weight elements contained in R.C. 2925.11(C)(4)(b) through (f) separately penalize a defendant "for the amount of cocaine possessed, and the amount of 'cocaine' clearly encompasses the whole compound or preparation of cocaine, including fillers that are part of the usable drug."

{¶ 14} This court's conclusion was based on the plain language of R.C. 2925.11(C)(4), which defines the general offense of cocaine possession as involving a "drug" that is "cocaine or a compound, mixture, preparation, or substance containing cocaine." Although our conclusion was based on the plain meaning of the cocaine-possession statute, we also noted that the ability to prove the weight of the controlled substance from the entire usable mixture alleviated unreasonable evidentiary burdens, given that the fillers cannot be separated from the pure drug and the purity level of a drug may vary considerably. *Id*. at ¶ 9. *See also Gonzales I* at ¶ 14 (Ohio's state labs were unable to perform purity analyses of drugs and would have required a significant amount of time to quickly become

6

accredited to conduct purity testing). By defining the crime in such a way that possessing a mixture is equivalent to possessing the pure drug, the General Assembly created a legal fiction that allowed us to presume that 100 percent of the mixture was cocaine for purposes of establishing the weight of the drug.

{¶ 15} Although the holding in *Gonzales II* addressed cocaine offenses, its reasoning applies to Pendleton's convictions for trafficking in over 50 grams of heroin and over 100 grams of fentanyl. To convict Pendleton of trafficking in heroin, the state was required to prove that the "drug" involved is "heroin or a compound, mixture, preparation, or substance containing heroin." R.C. 2925.03(C)(6). And pursuant to the version of R.C. 2925.03(C)(6)(f) in effect at the time of Pendleton's offenses, the amount of the "drug" required for a first-degree-felony violation of trafficking in heroin was 50 to 250 grams. 2015 Am.Sub.H.B. No. 64.[2] Thus, the statute allows the presumption that 100 percent of the mixture or substance is heroin for the purpose of establishing that the heroin weighs 50 to 250 grams.

{¶ 16} To convict Pendleton of aggravated trafficking in drugs pursuant to the version of R.C. 2925.03(C)(1) in effect at the time of the offenses, the state was required to prove that the "drug" involved was a "compound, mixture, preparation, or substance" containing a schedule II substance, that is, fentanyl. 2015 Am.Sub.H.B. No. 64. And the amount of "drug" required for a second-degree-felony violation of aggravated trafficking in drugs is 5 to 50 times the "bulk amount," R.C. 2925.03(C)(1)(d), that is, 100 to 1,000 grams "of a compound, mixture, preparation, or substance that is or contains any amount of a schedule II

---

2. During the time between Pendleton's offenses and his convictions, an amendment to R.C. 2925.03 reduced the bulk amount required for a first-degree felony for trafficking in heroin under R.C. 2925.03(C)(6)(f) from a range of 50 to 250 grams to a range of 50 to 100 grams. 2016 H.B. No. 171, effective September 14, 2016. The amendment reduced the bulk amount of heroin required for a major-drug-offender designation under R.C. 2925.03(C)(6)(g) from 250 grams to 100 grams. *Id.*

opiate," that is, fentanyl. R.C. 2925.01(D)(1)(d). Thus, the statute allows the presumption that 100 percent of the mixture or substance is fentanyl for the purpose of establishing that the fentanyl weighs 100 to 1000 grams.

{¶ 17} Given the foregoing, and pursuant to the logic of *Gonzales II*, each of the applicable drug-trafficking offenses under R.C. 2925.03 allows a fact-finder to consider conduct that *exists*—for example, trafficking in 50 grams of powder containing a detectable amount of heroin—and then make a fictional assumption about that existing conduct to satisfy the weight element of the offense: the full 50 grams is 100 percent heroin. Nothing in R.C. 2925.03 allows a fact-finder to then *create* additional conduct that does not exist in fact: trafficking in a separate, additional 50 grams of powder containing a detectable amount of fentanyl. Nothing in R.C. 2925.03 allows a fact-finder to double the fiction and assume that the full 50 grams is simultaneously 100 percent heroin and 100 percent fentanyl.

{¶ 18} Ohio's statutes prohibiting drug possession and drug trafficking, R.C. 2925.03 and 2925.11, provide a unique context for the application of the Double Jeopardy Clause because the statutes create different felony levels and impose different punishments "depending on the type and amount of illegal substance upon which a criminal charge could be made," *State v. Taylor*, 113 Ohio St.3d 297, 2007-Ohio-1950, 865 N.E.2d 37, ¶ 14, and because the statutes involve a presumption about the nature of the substance in order to satisfy the "amount" element. It is true that heroin and fentanyl cause distinct and severe harm, and the General Assembly has made it clear from its decision to create separate offenses based on drug classification that drugs of different types can be punished separately. *State v. Delfino*, 22 Ohio St.3d 270, 274, 490 N.E.2d 884 (1986). And the General Assembly has made it clear from its creation in R.C. 2925.03 of separate, weight-based offenses within each class of drug that trafficking in the same drug can be punished differently based on the weight of the drug. But the General Assembly also made clear that when weight is an element of an offense for a specific type of

8

drug, the full weight of the substance is considered as constituting that drug only. As a result, the substance cannot be considered as anything else, illicit or otherwise.

{¶ 19} Pendleton's conduct in this case—trafficking in 133.62 grams of a mixture of heroin and fentanyl—is not factually capable of constituting both the offense of trafficking over 50 grams of heroin and the offense of trafficking over 100 grams of fentanyl. Because Pendleton's conduct does not simultaneously constitute the two weight-based drug-trafficking offenses charged by the state, R.C. 2925.03 does not allow separate punishments to be imposed on his conduct. By imposing separate sentences of 11 years for Pendleton's conviction for trafficking in heroin in an amount over 50 grams and 8 years for his conviction for trafficking in fentanyl in an amount over 100 grams, the trial court punished Pendleton twice for a singular quantity of drugs, violating his right to be free from double jeopardy. Accordingly, we vacate those sentences, and we remand the cause to the trial court for a new sentencing hearing, at which the state must elect which of the two convictions to pursue for purposes of sentencing.

### III. CONCLUSION

{¶ 20} Under these facts, we hold that the imposition of two punishments for the same, singular quantity of drugs violated the Double Jeopardy protections of the Ohio and United States Constitutions. We therefore reverse the judgment of the Second District Court of Appeals to the extent that it holds otherwise, vacate the sentences imposed on Pendleton's convictions for trafficking in heroin and fentanyl, and remand the cause to the trial court for a limited hearing to resentence Pendleton on whichever of the two convictions the prosecutor chooses to pursue for purposes of sentencing.

Judgment reversed,

sentences vacated,

and cause remanded.

O'CONNOR, C.J., and FRENCH and STEWART, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by FISCHER and DEWINE, JJ.

———————————

**KENNEDY, J., dissenting.**

{¶ 21} Because double-jeopardy protections do not preclude a legislature from providing that the same conduct violates multiple criminal laws and is subject to multiple punishments in the same proceeding, it does not offend the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution for the General Assembly to punish trafficking in the preparation of a single mixture that contains heroin and fentanyl as separate offenses—trafficking in heroin and trafficking in a schedule II drug (fentanyl). Further, this court, in *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, which I interpret to apply with equal force to cocaine, heroin, and fentanyl, construed Ohio's drug laws in a way that requires a fact-finder to determine the weight of heroin and the weight of fentanyl by including any fillers and other substances in the same mixture, so that a single mixture of 133.62 grams of powder that contains both heroin and fentanyl must be deemed to contain both 133.62 grams of heroin and 133.62 grams of fentanyl. Imposing a separate sentence in the same proceeding for each of those trafficking offenses does not violate the Double Jeopardy Clause. I therefore dissent and would affirm the judgment of the Second District Court of Appeals.

{¶ 22} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This protection is applicable to the states through the Fourteenth Amendment to the United States Constitution. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). We have held that the Ohio Constitution's prohibition on double jeopardy, Article I, Section 10, is coextensive with and affords no greater double-jeopardy protections than the Fifth Amendment. *State v. Broom,* 146 Ohio St.3d 60, 2016-Ohio-1028, 51 N.E.3d 620, ¶ 21; *State v. Brewer,* 121 Ohio St.3d 202, 2009-Ohio-593, 903

N.E.2d 284, ¶ 14; *State v. Martello,* 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 7.

{¶ 23} Relevant here, "[t]he Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against the imposition of multiple criminal punishments for the same offense in successive proceedings." *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 24, citing *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). "[T]he Double Jeopardy Clause outright forbids multiple punishments for a single offense only when those punishments are imposed in successive proceedings." *Boyd v. Boughton*, 798 F.3d 490, 497 (7th Cir.2015), fn. 5.

{¶ 24} But when multiple punishments are imposed in the *same proceeding*, the Double Jeopardy Clause does nothing more than prevent the sentencing court from imposing greater punishment than the legislature intended. *Garrett v. United States,* 471 U.S. 773, 793, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985); *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 16. In this way, the Double Jeopardy Clause upholds the principles that the power to define criminal offenses and prescribe punishment belongs to the legislative branch and that courts may impose sentences only as provided by statute. *Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

{¶ 25} Double-jeopardy protections therefore do not limit the General Assembly's authority to establish multiple sanctions for the same offense, such as requiring both a fine and imprisonment as the sentence for a single crime. *See United States v. DiFrancesco*, 449 U.S. 117, 139, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). Nor do they prevent the legislature from prescribing multiple punishments when the same conduct or transaction results in the commission of multiple

offenses. *Gamble v. United States*, ___ U.S. ___, 139 S.Ct. 1960, 1965, 204 L.Ed.2d 322 (2019); *Garrett* at 793.

{¶ 26} The Double Jeopardy Clause plays no role in safeguarding against *excessive* punishments established by the legislature and imposed by a court *in the same proceeding*. Other constitutional provisions—the Due Process Clause, the Equal Protection Clause, and the Eighth Amendment's prohibitions against cruel and unusual punishment and excessive fines—protect against arbitrary, disparate, and disproportionate punishment. *See Hudson*, 522 U.S. at 103, 118 S.Ct. 488, 139 L.Ed.2d 450; *Chapman v. United States*, 500 U.S. 453, 465, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991); *Ingraham v. Wright*, 430 U.S. 651, 672-673, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

{¶ 27} Therefore, whether appellant, Kenny Pendleton, may be convicted of two drug-trafficking offenses arising from a mixture of 133.62 grams of powder containing both heroin and fentanyl is solely a question of legislative intent. And "[a]bsent a more specific legislative statement, R.C. 2941.25 is the primary indication of the General Assembly's intent to prohibit or allow multiple punishments for two or more offenses resulting from the same conduct." *State v. Washington,* 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 11. R.C. 2941.25 provides " 'a clear indication of the General Assembly's intent *to permit cumulative sentencing* for the commission of certain offenses.' " (Emphasis added.) *State v. Cooper*, 104 Ohio St.3d 293, 2004-Ohio-6553, 819 N.E.2d 657, ¶ 12, quoting *State v. Bickerstaff*, 10 Ohio St.3d 62, 66, 461 N.E.2d 892 (1984), fn. 1.

{¶ 28} R.C. 2941.25 states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the

indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 29} In this case, the same conduct resulted in the commission of two separate drug-trafficking offenses. When Pendleton prepared the 133.62 grams of powder containing heroin and fentanyl for distribution, he committed trafficking in heroin and trafficking in fentanyl. Based on our construction of Ohio's drug laws in *Gonzales*, the "heroin" in the powder includes the heroin and all the substances mixed with it (including the fentanyl) and the "fentanyl" in the powder includes the fentanyl and all the other substances mixed with it (including the heroin). *See id.*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, at ¶ 3. I recognize that the drug at issue in *Gonzales*, cocaine, is defined in R.C. 2925.01(X)(3) as a "salt, compound, derivative, or preparation," while heroin is not so defined. However, R.C. 2925.03(C)(6) criminalizes trafficking in "heroin or a compound, mixture, preparation, or substance containing heroin," and it would be incongruous to determine the weight of cocaine and fentanyl by including the whole mixture of drugs and fillers while determining the amount of heroin based on pure heroin in the mixture. Ohio law therefore permitted Pendleton to be convicted of possessing 133.62 grams of heroin and 133.62 grams of fentanyl based on the same 133.62 grams of powder.

{¶ 30} These offenses were not committed separately or with a separate animus, so the question is whether they are offenses of dissimilar import. In

determining whether offenses are allied offenses of similar import or offenses of dissimilar import, we consider whether the defendant's conduct involves separate victims or whether the harm that results from each offense is separate and identifiable. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 26.

{¶ 31} That test is easier to apply in a case in which there is one or more victim or in which there is a tangible harm. For example, if the offender purposefully shoots and kills the victim with a single bullet, the offender has committed numerous offenses—murder, attempted murder, felonious assault, assault—but can be convicted of only one of those offenses because the same conduct resulted in a single victim and a single identifiable harm.

{¶ 32} In a drug-trafficking case, there is no identifiable victim and no tangible harm in the sense that *Ruff* describes, yet each trafficking offense inflicts a separate harm on society, and the majority agrees that "drugs of different types can be punished separately." Majority opinion at ¶ 18. The only question here is how to determine the weight of each drug Pendleton trafficked, a determination that affects the degree of the offense.

{¶ 33} The manner in which the weight of each drug is determined is a question of legislative intent. As the majority opinion notes, our decision in *Gonzales* instructs that when the General Assembly defines a drug to include the drug itself and any other substances mixed or combined with it, then the weight of the drug is deemed to be the same as the total weight of the whole mixture—the drug, any fillers, and any other substances included in it. 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, at ¶ 12. Following that analysis here, Pendleton trafficked 133.62 grams of heroin and 133.62 grams of fentanyl, even though both drugs were part of the same 133.62 grams of powder.

{¶ 34} The majority, however, asserts that Pendleton's separate sentences are unconstitutional because "the trial court punished Pendleton twice for a singular

quantity of drugs, violating his right to be free from double jeopardy." Majority opinion at ¶ 19. However, the Double Jeopardy Clause does not prohibit Pendleton from being punished twice for the same mixture of powder in the same proceeding. As the Supreme Court of the United States recently explained, " '[T]he language of the Clause * * * protects individuals from being twice put in jeopardy "for the same *offence*," not for the same *conduct* or *actions*.' " (Brackets, ellipsis, and emphasis sic.) *Gamble*, ___ U.S. at ___, ___, 139 S.Ct. at 1965, 204 L.Ed.2d 322, quoting *Grady v. Corbin*, 495 U.S. 508, 529, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) (Scalia, J., dissenting). Trafficking in heroin and trafficking in fentanyl are not the same offense and are defined separately in the criminal code. And the Double Jeopardy Clause does not limit the General Assembly's prerogative to make criminal conduct subject to multiple punishments in the same proceeding. The constitutionality of multiple punishments for the same conduct in the same proceeding is solely an issue of legislative intent, and according to *Gonzales*, the General Assembly intended 100 percent of the powder to be treated as heroin and 100 percent of it to be treated as fentanyl. I dissented from the majority opinion in *Gonzales*, but until it is overruled by a majority of this court or abrogated by the General Assembly, it is a controlling construction of this state's drug laws.

{¶ 35} Punishing the same conduct—preparing a mixture of 133.62 grams of powder containing both heroin and fentanyl—as separate offenses in the same proceeding is not a violation of double-jeopardy protections, if the legislature intended to require multiple punishments. It is no different than providing that a drunk driver may be convicted and sentenced for each victim he or she killed in an accident—the legislature may define each killing to be a separate offense without violating double-jeopardy protections. Similarly, here, Pendleton may be convicted and sentenced for trafficking in heroin and trafficking in fentanyl because he committed those separate offenses in preparing the same powder.

{¶ 36} For these reasons, I would affirm the judgment of the court of appeals.  Because the majority does not, I dissent.

FISCHER and DEWINE, JJ., concur in the foregoing opinion.

_____

Daniel P. Driscoll, Clark County Prosecuting Attorney, and John M. Lintz, Assistant Prosecuting Attorney, for appellee.

Samuel H. Shamansky Co., L.P.A., Samuel H. Shamansky, Donald L. Regensburger, and Colin E. Peters, for appellant.

Dave Yost, Attorney General, Benjamin M. Flowers, State Solicitor, and Samuel C. Peterson, Deputy Solicitor, urging affirmance for amicus curiae, Attorney General Dave Yost.

_____