[Cite as *State v. Tingler*, 2023-Ohio-834.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Andrew J. King, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2022 CA00084 |
| TODD ALLEN TINGLER | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County
Court of Common Pleas, Case No. 2021
CR 0790

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      March 16, 2023

APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

KYLE STONE                                 D. COLEMAN BOND
Stark County Prosecutor                 116 Cleveland Aven. N.W.
BY: TIMOTHY E. YAHNER          Suite 600
Assistant Prosecutor                     Canton, OH 44702
110 Central Plaza South, Ste. 510
Canton, OH 44702

*Gwin, P.J.*

**{¶1}** Defendant-appellant Todd Allen Tingler ["Tingler"] appeals his conviction and sentence after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

**{¶2}** On April 5, 2021, North Canton police department Sergeant Shawn Bates received a call from dispatch concerning two people in a red car doing drugs in an Acme grocery store parking lot. Sergeant Bates responded to the scene, and approached the suspect vehicle, with his Body camera recording. State's Exhibit 1. He observed the driver, Tingler, inject his right arm with a syringe. Sergeant Bates asked Tingler what was in the needle. Tingler admitted that it was heroin.

**{¶3}** Sergeant Bates asked the female passenger and Tingler for their identification. Tingler could not locate his identification. Sergeant Bates ordered Tingler out of the vehicle, and began to search him. During the pat-down, Sergeant Bates found a folded-up lottery ticket in Tingler's left front pants pocket. Sergeant Bates observed an off-white powder inside the folded lottery ticket. State's Exhibit 2. Tingler told Sergeant Bates the folded lottery ticket contained coffee creamer.

**{¶4}** The North Canton police department does not field test suspected drugs. Sergeant Bates took the powder and the syringe back to the police station, where the items were packaged for the Stark County Crime Laboratory. State's Exhibit 3. Sergeant Bates secured the items in the police department's property room, until evidence officers transported them to the crime lab for testing.

**{¶5}** At the Stark County Crime Laboratory, forensic scientist Alexis Kimble analyzed the evidence submitted to the laboratory to determine whether narcotics were

present. She weighed and tested the powder and found it weighed 2.53 grams. State's Exhibit 4. Kimble tested approximately .02 grams of the substance, and was "100 percent sure" it was "fentanyl." Ms. Kimble testified at trial that under the law "we just have to determine that a small part of it, any mixture, compound, preparation of that is considered the whole weight of, of the substance is considered to be fentanyl." T. at 112. Ms. Kimble testified that she did not test the substance to determine if it contained baking soda or coffee creamer.

{¶6} Tingler testified that on the morning of April 5, 2021, he was staying at a hotel but did not have money to stay an additional night, so he took some of the coffee creamer that was in the waiting room on his way out. Tingler testified that he did not have his coffee yet and did not have anything else to put the coffee creamer into, so he poured it into a lottery ticket and folded it up in his pocket. Tingler testified that the couple stopped at a gas station and his girlfriend went inside and bought him a cup of coffee. T. at 132. Tingler testified that the couple then drove to the Acme parking lot to get things together and figure out what they were going to do and go from there. T. at 131.

{¶7} Tingler admitted that he was using heroin as could be seen in the body camera video but was denying that the substance in the lottery ticket was fentanyl. Instead, he testified that the substance was coffee creamer. Tingler testified that he could be seen drinking coffee in the body camera video before the officer came to his window. Tingler testified that he was not denying that he was using drugs, but simply was disputing the amount of drugs that he possessed, and that there was fentanyl in the coffee creamer. Tingler also testified that he does not carry heroin or fentanyl in folded paper and instead always uses a baggy, because the drugs will harden up if they are in paper.

{¶8} The jury found Tingler guilty of possession of a fentanyl-related compound, and further found that the amount of the fentanyl-related compound equaled or exceeded one gram, but was less than five grams. The trial judge sentenced Tingler to 18 months in prison with consideration for judicial release into the Stark County Regional Correction Center after 12 months.

*Assignments of Error*

{¶9} Tingler raises two Assignments of Error,

{¶10} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT, AND THE CONVICTION MUST BE REVERSED.

{¶11} "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

I & II

{¶12} In his First Assignment of Error, Tingler argues that there is insufficient evidence to support his conviction. In his Second Assignment of Error, Tingler maintains that his conviction is against the manifest weight of the evidence.

**Standard of Appellate Review– Sufficiency of the Evidence.**

{¶13} The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence

involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶14} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997); Walker*, 150 Ohio St.3d at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, 'if believed, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery,* 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review**:  *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Tingler was guilty beyond a reasonable doubt of possession of a fentanyl-related compound, in an amount equaling or exceeding one gram, but less than five grams*

{¶15}  Tingler admits he possessed fentanyl, which he believed to have been heroin; however, Tingler denies that he possessed 2.53 grams of fentanyl. [Appellant's brief at 9]. Tingler argues that it is possible that Sergeant Bates contaminated a portion of the coffee creamer seized from Tingler with the syringe seized from Tingler that he had used to inject heroin moments before his arrest.

{¶16}  In *Gonzales II,* the Supreme Court held,

We now hold that the entire "compound, mixture, preparation, or substance," including any fillers that are part of the usable drug, must be considered for the purpose of determining the appropriate penalty for cocaine possession under R.C. 2925.11(C)(4).

{¶17}   150 Ohio St.3d 276, ¶ 3. Further, in *State v. Pendleton*, the defendant was found to have 133.62 grams of heroin and fentanyl. 163 Ohio St.3d 114, 2020-Ohio-6833, 168 N.E.3d 458, ¶ 1-2. Pendleton was later convicted and sentenced "on a first-degree-felony conviction for trafficking in 133.62 grams of heroin" and "on a second-degree-felony conviction for trafficking in 133.62 grams of fentanyl." Id. at ¶ 1. The trial court found that these two convictions should not "merge for purposes of sentencing," concluding "that 'different drug groups constitute different offenses and are therefore not allied offenses of similar import.'" Id. at ¶ 3.

{¶18} On appeal, the Ohio Supreme Court determined that the application of Ohio's multiple counts statute in R.C. 2941.25 was not necessary to resolve this issue and disposed of this case by relying only on the requirements of R.C. 2925.03. *Pendleton* at ¶ 11-12. In applying R.C. 2925.03, the Ohio Supreme Court noted that,

The ability to prove the weight of the controlled substance from the entire usable mixture alleviated unreasonable evidentiary burdens, given that the fillers cannot be separated from the pure drug and the purity level of a drug may vary considerably. * * * By defining the crime in such a way that possessing a mixture is equivalent to possessing the pure drug, the General Assembly created a legal fiction that allowed us to presume that 100 percent of the mixture was [the prohibited drug] for purposes of establishing the weight of the drug.

{¶19} (Citations omitted.) Id. at ¶ 14, *citing State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, ¶ 9. As evidenced by the Supreme Court's decision in *Pendleton*, the state is not required to separate the controlled substance from the fillers and weigh only the pure drug.

{¶20} The state presented evidence that Tingler was in possession of a folded lottery ticket containing a powder substance that tested positive for fentanyl. Testimony was presented that the syringe and the lottery ticket arrived at the crime lab in separate packaging. T. at 101-102. The syringe was capped. T. at 103. Each was tested preliminarily via a chemical color test. T. at 98. The evidence was then subjected to a gas chromatography mass spectrometry test. T. at 99. Tingler cites to

nothing specific in the record to demonstrate that the Sergeant commingled or contaminated the evidence.

**{¶21}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Tingler possessed a fentanyl-related compound as defined by R.C. 2925.11(C)(11) in an amount equaling or exceeding one gram, but less than five grams. We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support Tingler's conviction.

### Standard of Appellate Review – Manifest Weight.

**{¶22}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

**{¶23}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra,* 78 Ohio St.3d at 386-387, 678 N.E.2d 541(1997), *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Thompkins* at 387, 678 N.E.2d 541, *citing Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982) (quotation

marks omitted); *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1244, ¶25, citing *Thompkins.*

{¶24} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

{¶25} **Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.*

{¶26} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although

the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶27} In the case at bar, the jury heard Sergeant Bates, Ms. Kimble and Tingler subjected to cross-examination. The jury saw the body camera footage.

{¶28} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we cannot reach the conclusion that the trier of facts lost its way and created a manifest miscarriage of justice. We do not find the jury erred when it found Tingler guilty. Taken as a whole, the testimony and record contains ample evidence of Tingler's responsibility for the crime. The fact that the jury chose to believe the testimony of the state's witnesses does not, in and of itself, render his conviction against the manifest weight of the evidence. While Tingler is certainly free to argue that he did not possess more than one gram but less than 5 grams of a fentanyl-related substance, on a full review of the record we cannot say that the jury clearly lost its way or created a manifest injustice. The state presented testimony and evidence from which the jury could have found all the essential elements of the offense proven beyond a reasonable doubt.

{¶29} Tingler's First and Second Assignments of Error are overruled.

**{¶30}** The judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, J., and

King, J., concur