[Cite as *State v. Johnson*, 2024-Ohio-5623.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                         Court of Appeals No.  L-23-1134

    Appellee                                        Trial Court No.  CR0200201945

v.

Marc Johnson                                    **DECISION AND JUDGMENT**

    Appellant                                       Decided:  November 27, 2024

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This is an appeal by appellant, Marc Johnson, from the May 3, 2023

judgment of the Lucas County Court of Common Pleas denying his motion to seal the

record.  For the reasons that follow, we affirm the trial court's judgment.

{¶ 2} Johnson sets forth two assignments of error:

    1.  The trial court failed to follow the statutory requirements of R.C.

       2953.33(B)(3).

2. The trial court abused its discretion in denying appellant's request to seal his records.

**Background**

{¶ 3} In May 2002, Johnson was indicted for: burglary, a fourth-degree felony; aggravated burglary, a second-degree felony; and attempted rape, a second-degree felony. Johnson was found not competent to stand trial and was ordered to undergo treatment and be confined at Northcoast Behavioral Healthcare System ("Northcoast"). Johnson had been diagnosed with paranoid schizophrenia.

{¶ 4} In February 2003, Johnson was found competent to stand trial and entered a plea of not guilty by reason of insanity to the charges.

{¶ 5} In June 2003, a bench trial was held, and the trial court found Johnson not guilty by reason of insanity. Johnson was ordered committed to Northcoast.

{¶ 6} Over the next 10 years, the trial court held review hearings and found that Johnson must remain at Northcoast.

{¶ 7} In June 2013, Johnson's maximum time for commitment was to expire soon, but the trial court found Johnson continued to be a mentally ill person subject to court-ordered hospitalization. The trial court issued an order for affidavits to be filed in probate court for civil commitment. There is nothing in the record as to what, if anything, occurred in probate court.

2.

**Request to Seal Record**

{¶ 8} In September 2022, Johnson filed with the trial court a petition for expungement of the record. In December 2022, Johnson filed an amended application to seal the record, pursuant to R.C. 2953.52,[1] since he was found not guilty by reason of insanity of the offenses, and not convicted of the offenses. Johnson sought to have his record sealed in hopes of improving his quality of life and his earnings. He contended that he completed coursework and obtained certificates ("the certificates") in mental health at Wayne County Community College and a program at Oakland Community Health Network, and he worked at Bob Evans for four years. Johnson attached documentation of the foregoing to his application.

{¶ 9} Johnson also asserted that he wished to enroll at a healthcare school and then work in the healthcare field but having this 20-year-old case on his record significantly affected his ability to work in that field. Johnson argued his interest in sealing the record far outweighed any legitimate need the government may have to maintain the record.

**Response to Request to Seal Record**

{¶ 10} The State requested that the trial court deny Johnson's application to seal record. The State set forth the facts underlying Johnson's burglary, aggravated burglary and attempted rape charges, as follows.

---

[1] R.C. 2953.52 was the statute in effect at the time that Johnson filed his amended motion to seal the record. Effective April 4, 2023, the statute was renumbered as R.C. 2953.33, but the provisions of R.C. 2953.52 and R.C. 2953.33, in relation to Johnson, are identical. For ease of discussion, we will refer to the renumbered statute, R.C. 2953.33.

3.

[O]n May 4, 2002, then seventy-two-year-old, [E.L.], was working in her yard when she was approached by the defendant, who asked [E.L.] if she had any work for him to do and then asked for money. According to [E.L.], she gave the defendant a can of coke and a dollar bill, and asked him to rake a portion of her yard. [E.L.] then returned to her yard work, and while she was distracted, the defendant entered [E.L.]'s home without her permission. Upon seeing the defendant exit her home a short time later, [E.L.] admonished the defendant that he was not to enter her home. According to [E.L.], she believed the defendant left her property shortly thereafter. Again, [E.L.] returned to her yard work, until she became hungry and went to get something to eat from inside of her house. Upon entering her home, [E.L.] found the defendant standing completely naked in an upstairs hallway. The defendant then grabbed [E.L.] and forced her into a front bedroom while tearing at her clothing and forcing her pants down to her knees. In an effort to protect herself against the nearly 200 pound, 40 years her junior assailant, [E.L.] struck the defendant with a child's toy, kicked him in the groin, and squeezed his penis as if wringing a mop-all to no avail. It wasn't until [E.L.] bit the defendant's penis and blood began to pour from it, that the defendant stopped his attack and fled from [E.L.'s] home. Immediately thereafter [E.L.] called 911 and was transported to a nearby hospital where she was medically evaluated and interviewed by members of the Toledo Police Department.

Following [E.L.'s] description of the events and her attacker, the defendant was located outside of the Cherry Street Mission, at which time he declared "I didn't do what she said I did." The defendant was then transported to St. Vincent's Hospital at which time he told the treating physician that he could tell the victim wanted him, so he pulled off her pants and tried to have sex with her, at which time the victim grabbed him and bit his penis. In a later interview with Toledo Police Detective George Barber, the defendant admitted to twice entering the victim's home and pulling down her pants, but couldn't recall how the two came to be in the bedroom.

{¶ 11} The State observed the determination at trial was not that Johnson did not commit the offenses, but that he was insane at the time of the offenses. The State argued that due to the extreme seriousness of the offenses, the State of Ohio has a substantial interest in preserving public safety, especially for those most vulnerable in our community, by maintaining records related to Johnson and this case.

4.

{¶ 12} The State asserted "R.C. 2953.[33] applies equally to those individuals who have been found not guilty by reason of insanity," and cited *State v. Reiner*, 2016-Ohio-5520, ¶ 11 (8th Dist.), *State v. Z.J.*, 2007-Ohio-552, ¶ 15 (8th Dist.), *State v. Schwartz*, 2005-Ohio-3171, ¶ 9 and *State v. Haney*, 70 Ohio App.3d 135, 139 (10th Dist. 1991).

{¶ 13} A hearing on the matter was held on Johnson's amended motion to seal the record.

## Trial Court Hearing

{¶ 14} Johnson testified to the following. After he was released from confinement, he was in a group home for two or three years. He could not recall if during that time he had treatment for mental health issues, but he did not think so. He left the group home to live with his sister and family in Michigan, where he still resides. Once in Michigan, he was "put in a place suddenly" for his mental health issues and was getting a "[p]aranoid schizophrenia shot" for his schizophrenia diagnosis. He said he has gotten a shot for "a long time. I sure take enough." Johnson still got shots and also met with a counselor.

{¶ 15} When questioned about how he was doing with the shots, he replied, "Well, I'm doing -- I think I'm doing good. I be, still be seeing little spirits and stuff, but it don't bother me too much." He was asked if he had different mechanisms to help cope with those issues, and he responded, "I've been taught in classes. I remember some of those things that were taught to me. And basically[,] I have a counselor talking to me when I get . . . my shot and he just, he just helps me."

5.

{¶ 16} When Johnson was asked if he was continuing with this treatment in the future, he said, "Well, like I said, these spirits don't really bother me too much and if I was fixing to get my job officially and I'm doing okay, if I'm lucky I want to leave it alone." He was also asked if he would follow the recommendation of the counselor or doctor and he replied, "[y]es, that's what it is."

{¶ 17} Johnson was queried about being diagnosed with or having mental health issues and he responded, "Yes. . . . That's what they say[.]" Johnson meant "that's what I've been diagnosed with but I didn't never come to agreement as to what I have. . . . I went through the process of . . . a person having a mental health problem. I recognize that. . . I went through the process and got senses and all that, but I came to recognize it now, but that's not what I want to keep for a lifetime thing." Johnson was asked if he "just [didn't] necessarily believe that [he was] going to continue having schizophrenia going forward," and he responded, "Yeah, that's right, if I keep doing my medication and stuff . . . they say you have to follow the doctors."

{¶ 18} Johnson was asked if, in the past, he stopped taking medication despite doctor's orders, and he said he had "been taking medication throughout, but . . . I can't recall, but to be honest, I might have stopped it."

{¶ 19} Johnson discussed that he wanted to have his record sealed so he could go to a particular school in order to be able to be a direct care worker in the health care field. He said while growing up, he thought the mental health field would be a good fit for him.

{¶ 20} Johnson's brother-in-law testified to the following.

6.

{¶ 21} The brother-in-law is married to Johnson's sister, and they have two children.

{¶ 22} Johnson lived at the group home for close to two years and "was still going to the doctor, he was still receiving his medication" for mental illness. In 2015, Johnson moved in with the brother-in-law and his family in Michigan and has lived with them since. Johnson receives a disability check for his mental health and also works at Bob Evans as a dishwasher; he has worked there for five years. Johnson's sister is the payee for Johnson's Social Security Disability.

{¶ 23} The brother-in-law said Johnson receives treatment for his mental health issues, "[t]hat was one of -- you know, when he first came to live with us my children were small so quite naturally I did have some reservations, but I stayed on that, I have his dates that kicks into my phone every month when he has to take his shots, when he takes his pills." Johnson has consistently taken his medication because "he has to because that's the only way he can live in my home with my children." Prior to Johnson receiving a monthly shot, he was prescribed pills and there were mix-ups at the pharmacy with the medications, so Johnson did not always take all of his medicines.

{¶ 24} The brother-in-law shared that Johnson has come a long way, he is a really nice guy, a gentleman, and he has not been in any trouble since he has lived in Michigan. It would be good for Johnson to work in the mental health field, as it would go a long way in building his self-esteem and keeping him on the right track of where he wants to go.

7.

## Trial Court's Order

{¶ 25} In its May 3, 2023 order, the trial court recognized that the record reflected Johnson was found not guilty by reason of insanity of the three felony charges. The court found the government had a substantial and sufficiently compelling interest in maintaining the records Johnson sought to seal. The court further found that although Johnson had been law-abiding since his confinement ended, he maintained compliance with taking his medications, and he was employed while seeking a better job, it was clear, despite the not guilty by reason of insanity finding, Johnson was not innocent of the offenses with which he was charged. In addition, the court stated "while the court is edified by the strides Defendant has made in his life following his release from the Northwest Ohio Psychiatric Hospital ten years ago, the nature and gravity of the 2003 offenses weigh in favor of the state. Motion denied." Johnson appealed.

## R.C. 2953.33 – Application to Have Record Sealed

{¶ 26} R.C. 2953.33 provides in relevant part:

(A)(1) Any person, who is found not guilty of an offense by a jury or a court . . . may apply to the court for an order to seal . . . the person's official records in the case[.]
. . .
(B)(1) Upon the filing of an application pursuant to division (A) of this section, the court shall set a date for a hearing. . . . The prosecutor may object to the granting of the application by filing a written objection . . . The prosecutor shall specify in the objection the reasons the prosecutor believes justify a denial of the application.
(2) The court shall do each of the following, except as provided in division (B)(3) of this section:
(a)(i) Determine whether the person was found not guilty in the case[;]
. . .
(b) Determine whether criminal proceedings are pending against the person;

(c) If the prosecutor has filed an objection . . . consider the reasons against granting the application specified by the prosecutor in the objection;
. . .
(e) Weigh the interests of the person in having the official records pertaining to the case sealed or expunged, as applicable, against the legitimate needs, if any, of the government to maintain those records.
(3) If the court determines after complying with division (B)(2)(a) of this section that the person was found not guilty in the case . . . the court shall issue an order to the superintendent of the bureau of criminal identification and investigation directing that the superintendent . . . cause to be sealed . . . the official records in the case consisting of DNA specimens that are in the possession of the bureau and all DNA records and DNA profiles.  The determinations and considerations described in divisions (B)(2)(b), (c), and (e) of this section do not apply with respect to a determination of the court described in this division.
(4) The determinations described in this division are separate from the determination described in division (B)(3) of this section.  If the court determines, after complying with division (B)(2) of this section, that the person was found not guilty in the case . . .; that no criminal proceedings are pending against the person; and the interests of the person in having the records pertaining to the case sealed . . . are not outweighed by any legitimate governmental needs to maintain such records, . . . in addition to the order required under division (B)(3) of this section, the court shall issue an order directing that all official records pertaining to the case be sealed . . . and that . . . the proceedings in the case be deemed not to have occurred.

{¶ 27} We will address Johnson's assignments of error together.

## First Assignment of Error

### Johnson's Arguments

{¶ 28} Johnson argues the trial court failed to follow the requirements of R.C. 2953.33(B)(3) concerning the sealing of DNA records.  Johnson asserts the court was required to order BCI to seal the DNA records of the case, which was not a matter of discretion, but a matter of law, reviewed de novo by this court.  Johnson cites to *State v. T.D.*, 2020-Ohio-3489, ¶ 7 (6th Dist.), where this court set forth that whether or not a trial

9.

court complied with a statute is a question of law, which is reviewed under a de novo standard of review. This court cited to *State v. Futrall*, 2009-Ohio-5590, ¶ 6, in support. *Id.*

{¶ 29} Johnson insists that because the trial court failed to follow the statute, this matter should be reversed and remanded or this court should enter the judgment that the trial court should have entered, and order BCI to seal Johnson's DNA records.

**State's Arguments**

{¶ 30} The State argues that Johnson's assertion, that the trial court was required to order BCI to seal his DNA records, is waived because it was never raised or addressed in the trial court. The State submits that Johnson now relies on R.C. 2953.33(B)(3), but in the trial court, R.C. 2953.33(B)(2) was the subsection argued.

{¶ 31} The State further asserts that R.C. 2953.33 does not and should not apply to not guilty by reason of insanity defendants, as the legislature did not intend for the statute to include not guilty by reason of insanity defendants, or it would have indicated such. The State argues not guilty by reason of insanity is a term of art that is not synonymous with not guilty. The State quotes Black's Law Dictionary (10th Ed. 2014) ("Black's"), in which "'not guilty'" is defined as a "'verdict acquitting the defendant because the prosecution failed to prove the defendant's guilt beyond a reasonable doubt,'" and under the definition of "'innocent,'" it states "'See not guilty.'" The State sets forth that Black's defines "'not guilty by reason of insanity'" as "'[a] not guilty verdict, based on

10.

mental illness, that usually does not release the defendant but instead results in commitment to a mental institution. See Insanity Defense.'" *Id.*

{¶ 32} The State contends that not guilty by reason of insanity has its own statutory provision which reveals the legislature's intent that it be treated differently from a finding of not guilty. The State refers to R.C. 2945.37 through R.C. 2945.402. The State also observes that a finding of not guilty by reason of insanity triggers certain procedures and consequences for a defendant, which must be followed pursuant to R.C. 2945.391 and R.C. 2945.40, one of which is the potential detention of the defendant until the hearing to institutionalize can be held. The State maintains that this emphasizes that unlike defendants who are found not guilty, the public needs protection from not guilty by reason of insanity defendants, and not guilty by reason of insanity defendants are and should be confined by the State. In addition, the State observes that the trial court pointed out that Johnson was not innocent of the offenses.

{¶ 33} The State further argues that not guilty by reason of insanity is unique from other affirmative defenses like self-defense and battered women syndrome where a defendant admits to committing the offense but is not punished or confined by the State because the legislature recognizes they are excused and not a threat to the State. The State submits with not guilty by reason of insanity, the legislature wrote the code so that a defendant is punished and confined by the State to protect the people of the State and the defendant from himself or herself.

11.

**Johnson's Reply**

{¶ 34} Johnson submits, with respect to the State's waiver argument, that since the issue of whether the statute applies is a matter of statutory interpretation, it is a question of law, and any error of law is plain error.

{¶ 35} As to the applicability of R.C. 2953.33 to not guilty by reason of insanity defendants, Johnson notes the State tries to argue that a not guilty by reason of insanity verdict is not a "not guilty" verdict, but the State's citations to Black's demonstrate that a not guilty by reason of insanity verdict is a not guilty verdict.

{¶ 36} Regarding the State's argument that innocence is required before section R.C. 2953.33(B)(3) applies, Johnson insists that actual innocence is not the standard, and because not guilty does not mean actual innocence, not guilty should be construed to encompass not guilty by reason of insanity verdicts. He contends if the State had intended the statute not to apply to not guilty by reason of insanity verdicts, the statute would say so. He notes that while the State asserts the legislature could have used terms of art, like "acquittal" or "actual innocence" in the statute, he claims the fact that an ordinary phrase was used instead of a term of legal art is telling. Johnson cites to R.C. 1.42, which states "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." He argues that since the legislature did not impose a technical

12.

meaning into the statute, the statute must be construed to include not guilty by reason of insanity verdicts as well as acquittals.

{¶ 37} Johnson also asserts that the State mischaracterizes R.C. 2945.37 - R.C. 2945.402 as not guilty by reason of insanity's "own statutory provision, revealing the legislature's intent that it be treated differently from a not guilty finding," because these statutes pertain to a defendant's competency to stand trial, which is substantively different from not guilty by reason of insanity. He observes a person is not guilty by reason of insanity "if the person proves . . . that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14). Johnson argues the standard for competency is different and relates to the defendant's present mental condition and his ability to understand the nature of the proceedings against him, and to assist defense counsel. *State v. Davis*, 2014-Ohio-90, ¶ 24 (10th Dist.).

{¶ 38} Last, Johnson argues that because (B)(3) of R.C. 2953.33 applies to not guilty by reason of insanity, nothing indicates that (B)(2) would not also apply. He cites, inter alia, *Schwartz*, 2005-Ohio-3171 at ¶ 7 (1st Dist.), where the appellate court rejected the State's argument that R.C. 2953.33 only applied to acquittals, and noted that R.C. 2953.32 only applied to convictions, and a not guilty by reason of insanity verdict was not a conviction. *Id.* at ¶ 8. Johnson contends there is no other statutory avenue for expunging a not guilty by reason of insanity verdict, other than R.C. 2953.33.

13.

## Second Assignment of Error

{¶ 39} Johnson argues that the trial court abused its discretion when it denied his request to seal his records. He notes that a criminal defendant who was found not guilty has a statutory privilege to request that the criminal record be sealed, and R.C. 2953.33 gives the trial court the discretion to determine whether to seal the record.

{¶ 40} Johnson acknowledges that the trial court's judgment entry purports to weigh governmental interests against his interest in having his record sealed, which complies with the statute on its face. Notwithstanding, he contends "this Court should still review the weighing process, the considerations made by the trial court, and find that the facts weigh in favor of sealing [Johnson's] record."

{¶ 41} Johnson asserts the trial court stated a conclusion as to governmental interests but offered no reasons to support the conclusory statement other than to note "that the 'nature and gravity of the 2003 offenses weigh in favor of the State,'" and Johnson "'is not innocent of the offenses with which he was charged.'" Johnson maintains he "was found not guilty, albeit by insanity, but the fact remains that criminal proceedings against [him] terminated as soon as the not guilty by reason of insanity verdict was entered and this statute applies, just as it would apply with a simply acquittal." He refers to *Z.J.*, 2007-Ohio-552 at ¶15 (8th Dist.), citing *Schwartz*, 2005-Ohio-3171 (1st Dist.).

{¶ 42} Johnson argues the court's remark that he was "not innocent" is irrelevant, since this is not the standard for sealing a record. Johnson asserts that just because he

14.

was found not guilty by reason of insanity does not automatically create a legitimate need of the government to retain his records. Johnson cites to R.C. 2953.33(B)(2)(e) in support.

## Issues Presented

**{¶ 43}** Johnson's assignments of error are framed in terms of the trial court's lack of compliance with R.C. 2953.33, and the court's abuse of discretion in applying the statute, both of which focus on the trial court's interpretation of that statute.

**{¶ 44}** The State's argument is that R.C. 2953.33 does not apply to not guilty by reason of insanity verdicts.

## Issue to be Addressed

**{¶ 45}** As a threshold matter, we note the State did not raise, in the trial court, that R.C. 2953.33 does not apply. Generally, the failure to raise the issue of the applicability of a statute in the trial court constitutes a waiver of the issue on appeal. *State v. Awan*, 22 Ohio St.3d 120 (1986), syllabus, limited by *In re M.D.*, 38 Ohio St.3d 149 (1988), syllabus. However, since common pleas courts in Ohio have subject matter jurisdiction over expungements, a court's failure to comply with the requisite statutes involves the improper exercise of that jurisdiction, and judgments with errors concerning the sealing criminal records of offenders who are or are not eligible are voidable errors which may be raised on direct appeal. *See State v. Watkins*, 2020-Ohio-1366, ¶ 18, 20 (7th Dist.).

**{¶ 46}** Thus, while the State could have raised the argument in the trial court, that R.C. 2953.33 did not apply, we may also consider the State's argument on appeal.

15.

## Standard of Review

{¶ 47} "The interpretation and application of a statute is a question of law subject to de novo review." *Kerger & Hartman, L.L.C. v. Ajami*, 2015-Ohio-5157, ¶ 39 (6th Dist.). "Under such review, an appellate court does not give deference to the trial court's determination." *Id.*

## Statutory Application and Interpretation

{¶ 48} A statute which conveys a clear and definite meaning must be applied as written. *State v. Parker,* 2019-Ohio-3848, ¶ 21. Only ambiguous statutes are subject to interpretation. *State v. Hairston,* 2004-Ohio-969, ¶ 11, citing *Slingluff v. Weaver,* 66 Ohio St. 621 (1902), paragraph one of the syllabus. When interpreting a statute, a court must "'give effect to the words used, not …delete words used or insert words not used.'" *State v. Tuomala,* 2004-Ohio-6239, ¶ 12, quoting *Cleveland Elec. Illum. Co. v. Cleveland,* 37 Ohio St.3d 50 (1988), paragraph three of the syllabus.

{¶ 49} Typically, a statute is ambiguous when the language used is "'capable of bearing more than one meaning.'" *Jacobson v. Kaforey*, 2016-Ohio-8434, ¶ 8, quoting *Dunbar v. State*, 2013-Ohio-2163, ¶ 16. However, an ambiguity may result not only from "'the indefiniteness of the meaning of a word or phrase,'" but also "from a word or phrase that by itself is 'perfectly clear in its meaning' but becomes 'clouded with obscurity when considered in relation to other words in a statement containing the word or phrase.'" *Dana Corp. v. Testa, Tax Commr.*, 2018-Ohio-1561, ¶ 23, quoting *Pittsburgh Steel Co. v. Bowers*, 173 Ohio St. 74, 77 (1962).

16.

{¶ 50} Since "'words in a statute do not exist in a vacuum,'" a court reviewing a statute for ambiguity should direct its "'attention . . . beyond single phrases, and . . . should consider, in proper context, all words used by the General Assembly in drafting [the pertinent statute] with a view to its place in the overall [statutory] scheme.'" *State v. Gonzales*, 2017-Ohio-777, ¶ 5, quoting *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 2002-Ohio-4172, ¶ 19.

### Criminal Proceedings

{¶ 51} In Ohio, "[a]ll crimes are statutory…[and] [t]he elements necessary to constitute a crime must be gathered wholly from the statute." *State v. Cimpritz,* 158 Ohio St. 490 (1953), paragraphs one and two of the syllabus. *See* Ohio Revised Code Title XXIX, "Crimes-Procedure" (R.C. 2901.01 to 2981.14). The Ohio Rules of Criminal Procedure "prescribe the procedure to be followed in all courts of this state in the exercise of criminal jurisdiction, with [certain] exceptions[.]" Crim.R. 1(A.)

### Not Guilty by Reason of Insanity Pleas and Verdicts

{¶ 52} Crim.R. 11(A) designates possible pleas as not guilty, not guilty by reason of insanity, guilty or no contest, and requires a plea of not guilty by reason of insanity to be in writing, while other pleas are allowed orally or by "remote contemporaneous video."

{¶ 53} Insanity is an affirmative defense that the defendant must prove, and "has no bearing on the sufficiency of the evidence" to support the State's case. *State v. Moore,* 2024-Ohio-994, ¶ 56 (6th Dist.), citing *State v. Grate,* 2020-Ohio-5584, ¶ 76,

17.

A not guilty by reason of insanity plea does not relieve the state of its burden to prove the elements of the charged offenses, but it permits a defendant to present evidence sufficient to support the affirmative defense and obtain an acquittal on the ground of insanity. *State v. Humphries,* 51 Ohio St.2d 95, 101 (1977); R.C. 2901.05(A). A person is not guilty by reason of insanity "only if the person proves . . . that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14).

{¶ 54} After a trial, if a person is found not guilty by reason of insanity, statutes provide specific procedures for insanity verdicts, including requiring the verdict to state the complete finding of not guilty by reason of insanity, as opposed to merely not guilty, ordering mental health evaluations and holding hearings. *See* R.C. 2945.40, 2945.401 and 2945.402.

{¶ 55} Furthermore, a person found not guilty by reason of insanity is still subject to the trial court's jurisdiction, and there are provisions for potential loss of liberty, such as commitment to a facility. *See* R.C. 2945.40 and 2945.401. If the trial court orders commitment, when "determining the place of commitment, the court shall consider the extent to which the person is a danger to the person and to others, the need for security, and the type of crime involved and shall order the least restrictive alternative available that is consistent with public safety and the welfare of the person. In weighing these factors, the court shall give preference to protecting public safety." R.C. 2945.40(F).

18.

**{¶ 56}** The trial court's jurisdiction over the person continues until the person's commitment terminates. *See* R.C. 2945.401. Commitment terminates, inter alia, if the trial court finds the person no longer suffers from a mental illness subject to court order, or the maximum term or terms of imprisonment the person could have received upon conviction has expired. *See* R.C. 2945.401(A) and (J). If termination results from expiration of the maximum term of imprisonment, the trial court or the prosecutor may seek to extend the person's confinement by initiating separate civil commitment proceedings. *See* R.C. 2945.401(A).

### Sealing of Records

**{¶ 57}** Sealing a criminal record is governed by statute and is an "act of grace created by the state." *State v. Boykin,* 2013-Ohio-4582, ¶ 11, quoting *State v. Hamilton,* 75 Ohio St.3d 636, 639 (1996). When a criminal record is sealed, the proceedings are "deemed not to have occurred," R.C. 2953.33(B)(4), and law enforcement in possession of records or reports related to the case must treat those records and reports "as if they did not exist and had never existed." R.C. 2953.34(I) and (K).

**{¶ 58}** The Ohio Revised Code sets forth one statute for sealing a record of conviction, R.C. 2953.32, and another statute for sealing a record of nonconviction, R.C. 2953.33. These statutes provide the limits of trial court's jurisdiction, *State v. Pariag,* 2013-Ohio-4010, ¶ 12, so a person who seeks to have a record sealed must demonstrate eligibility to invoke the trial court's jurisdiction in a proceeding to seal a record. *State v.*

19.

*Ninness,* 2013-Ohio-974, ¶ 7 (6th Dist.), quoting *State v. Reed,* 2005-Ohio-6251, ¶ 8 (10th Dist.).

**Applicability of R.C. 2953.33 to Not Guilty by Reason of Insanity Verdicts**

{¶ 59} R.C. 2953.33 allows an applicant who was "found not guilty of an offense by a jury or a court or who [was] the defendant named in a dismissed complaint, indictment, or information," to apply to have the record sealed. Notably, the General Assembly did not specify "not guilty by reason of insanity" as an eligible disposition. Undoubtedly, when drafting this nonconviction sealing statute, the General Assembly could have included not guilty by reason of insanity in its list of dispositions, yet it did not.

{¶ 60} Given that certain criminal rules, like Crim.R. 11, and statutes, such as R.C. 2945.401, identify not guilty by reason of insanity as a separate manner for pleading and a separate verdict for disposition, the legislature's omission of not guilty by reason of insanity in R.C. 2953.33(A) is significant. Moreover, considering the applicable statutes addressing insanity in the criminal context, not guilty and not guilty by reason of insanity are different adjudications. For instance, with a not guilty verdict, the defendant is discharged following the judgment of acquittal, *see State v. Hampton*, 2011-Ohio-3486, ¶ 12-13 (10th Dist.), but an insanity verdict could result in the person's confinement, thus a not guilty by reason of insanity verdict might delay the discharge of the person beyond the date of the verdict. Thus, the immediate sealing of a nonconviction record, afforded in R.C. 2953.33, is inconsistent with the procedure required relative to an insanity verdict

20.

under R.C. 2945.40, where the trial court's jurisdiction over the person continues until the person's commitment terminates.

{¶ 61} Recently, in *State v. G.K.,* 2022-Ohio-2858, the Ohio Supreme Court addressed the nonconviction-sealing statute (now R.C. 2953.33). G.K. had entered a plea of guilty to one count in the indictment and the remaining counts were dismissed. *Id.* at ¶ 3. G.K. then filed an application to seal the record for the dismissed counts. *Id.* at ¶ 4. The lower court found the statute ambiguous and, after consulting extratextual sources to discern the meaning of the language in the statute, construed the statute as permitting partial sealing of the case. *Id.* at ¶ 16-17.

{¶ 62} The Supreme Court reversed, finding the statute was clear on its face and there was no ambiguity regarding a person's ineligibility to seal a partially dismissed indictment. *Id.* at ¶ 1, 16, 19. The court relied on the plain language of the statute when it determined that G.K. had not been found not guilty in the case and the charges in the case were not dismissed. *Id.* at ¶ 19. The court noted that this plain language finding was in accord with the other portions of the nonconviction-sealing statute, such as the portion which reads that "[a] court cannot seal 'all official records pertaining to the case,' while simultaneously maintaining the record of the conviction in the case." *Id.* at ¶ 20, citing former R.C. 2953.52(B)(4); *Futrall,* 2009-Ohio-5590 at ¶ 19.

{¶ 63} We recognize that courts from other jurisdictions, in decisions predating *G.K.*, construed the statutory language of R.C. 2953.33 and expanded it such that a not guilty verdict included a not guilty by reason of insanity verdict. *See Schwartz,* 2005-

21.

Ohio-3171 at ¶ 7-8 (1st Dist.) and *Reiner,* 2016-Ohio-5520 at ¶ 11 (8th Dist.) (R.C. 2953.33 "applies equally to those individuals who have been found not guilty by reason of insanity. *State v. Z.J.,* . . . 2007-Ohio-552, ¶ 15 [(8th Dist.)], citing *State v. Schwartz*[.]"). Other courts applied the nonconviction statute to insanity verdicts without analysis. *See State v. Mers,* 2016-Ohio-4893 (2d Dist.) and *Haney,* 70 Ohio App.3d 135 (10th Dist. 1991).

{¶ 64} Based upon the forgoing, we find the law supports the argument advanced by the State on appeal, that not guilty by reason of insanity and not guilty are not synonymous. We also find that since the plain language of R.C. 2953.33 fails to list not guilty by reason of insanity as an eligible disposition for allowing the sealing of a record, the statute does not apply to the sealing of the record of an individual who was found not guilty by reason of insanity. As such, we find that Johnson failed to demonstrate eligibility under R.C. 2953.33 to apply to have his record sealed, as he was found not guilty by reason of insanity, and the trial court erred when it applied R.C. 2953.33 in Johnson's case. Notwithstanding, we affirm the trial court judgment, albeit it on a different basis. Accordingly, Johnson's first and second assignments of error are found not well-taken.

### Certification of Conflict

{¶ 65} With respect to the conflict which exists between our decision and the decisions of four other Ohio courts of appeals, we observe that Section 3(B)(4), Article IV of the Ohio Constitution provides:

22.

[w]henever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination.

{¶ 66} The Ohio Supreme Court, in *Whitelock v. Gilbane Bldg. Co.*, 66 Ohio St.3d 594, 596 (1993), set forth three requirements which must be met in order to certify a case:

First, the certifying court must find that its judgment is in conflict with the judgment of a court of appeals of another district and the asserted conflict must be "upon the same question." Second, the alleged conflict must be on a rule of law-not facts. Third, the journal entry or opinion of the certifying court must clearly set forth that rule of law which the certifying court contends in conflict with the judgment on the same question by other district courts of appeals.

{¶ 67} We find, sua sponte, our judgment in this appeal is in conflict with *State v. Reiner,* 2016-Ohio-5520 (8th Dist.), *State v. Mers,* 2016-Ohio-4893 (2d Dist.), *State v. Z.J.*, 2007-Ohio-552 (8th Dist.), *State v. Schwartz,* 2005-Ohio-3171 (1st Dist.) and *State v. Haney,* 70 Ohio App.3d 135 (10th Dist. 1991).

{¶ 68} We, therefore, sua sponte certify a conflict to the Supreme Court of Ohio, on the following question for review:

Does R.C. 2953.33, the Application to Have Records Sealed statute for persons found not guilty of offenses, apply to persons found not guilty by reason of insanity?

### Conclusion

{¶ 69} We certify a conflict to the Ohio Supreme Court, and the parties are directed to Sup.R.Pract. 8.01 for instructions on how to proceed.

23.

{¶ 70} The judgment of the Lucas County Court of Common Pleas is affirmed.

Pursuant to App.R. 24, Johnson is ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.          _____
                                                   JUDGE

Myron C. Duhart, J.
CONCUR.                         _____
                                                   JUDGE

Charles E. Sulek, P.J.
DISSENTS AND WRITES
SEPARATELY.

**SULEK, P.J., dissenting.**

{¶ 71} Because I believe that the State should not be able to change its argument for the first time on appeal, and because I agree with the State's original position that R.C. 2953.33 applies to individuals found not guilty by reason of insanity ("NGRI"), I respectfully dissent.

{¶ 72} In its decision, the majority notes that "the State did not raise, in the trial court, that R.C. 2953.33 does not apply." This mischaracterizes the record. The State, in fact, took the opposite position of what it now argues on appeal, asserting in its December 20, 2022 "Response to Defendant's Application to Seal Record of Not Guilty

24.

Finding" that "R.C. 2953.[33] applies equally to those individuals who have been found not guilty by reason of insanity."

{¶ 73} It is well-recognized that "[a] party may not change [its] theory of the case and present new arguments for the first time on appeal." *State v. Henning*, 2023-Ohio-2905, ¶ 27 (6th Dist.), citing *Tokles v. Black Swamp Customs, L.L.C.*, 2015-Ohio-1870, ¶ 24 (6th Dist.); *see also State ex rel. S.Y.C. v. Floyd*, 2024-Ohio-1387, ¶ 18; *State v. Peterson*, 2023-Ohio-3544, ¶ 31 (6th Dist.). Thus, I would not address the State's newly found position that R.C. 2953.33 does not apply to NGRI defendants.

{¶ 74} Moreover, even if I were to address it, I see no reason to break from the established precedence that R.C. 2953.33 does apply to NGRI defendants. *See State v. Reiner*, 2016-Ohio-5520, ¶ 11 (8th Dist.) ("Relevant to the circumstances of this case, R.C. 2953.52 applies equally to those individuals who have been found not guilty by reason of insanity."); *State v. Z.J.*, 2007-Ohio-552, ¶ 15 (8th Dist.) ("[R.C. 2953.52(A)] makes no mention of the underlying reason for the finding of not guilty. We agree with the First District that this provision applies to a finding of not guilty by reason of insanity."); *State v. Schwartz*, 2005-Ohio-3171, ¶ 7 (1st Dist.) ("The state argues that, because it refers to only a straight not-guilty finding, the section is not available to those individuals found not guilty by reason of insanity. We disagree. Despite that it results in commitment proceedings, a successful insanity plea ends with a finding of not guilty by the trial court."); and *State v. Haney*, 70 Ohio App.3d 135, 139 (10th Dist.) (applying R.C. 2953.52 to a NGRI defendant).

25.

**{¶ 75}** In being the first court to take the contrary position, the majority asserts that "not guilty" and "not guilty by reason of insanity" are different adjudications since they are identified as separate manners of pleading and separate verdicts for disposition. According to the majority, it therefore necessarily follows that because the General Assembly listed only "not guilty" and did not include "not guilty by reason of insanity," then it must have intended to exclude NGRI defendants from the relief afforded by R.C. 2953.33.

**{¶ 76}** I disagree. I do not view "not guilty" and "not guilty by reason of insanity" as wholly distinct from each other. Instead, I view "not guilty by reason of insanity" as a subset of "not guilty." Indeed, as cited by the State, Black's Law Dictionary defines "not guilty by reason of insanity" as "*[a] not guilty verdict*, based on mental illness, that usually does not release the defendant but instead results in commitment to a mental institution." (Emphasis added.) NOT GUILTY, Black's Law Dictionary (12th ed. 2024). Thus, a defendant who is not guilty by reason of insanity is still "not guilty" of the offense; he is not culpable for his conduct because he "did not know, as a result of severe mental disease or defect, the wrongfulness of [his] acts." R.C. 2901.01(A)(14). As a result, I would not read into R.C. 2953.33 an exclusion for not guilty by reason of insanity that is not present in the text. Like the majority observed, the General Assembly could have excluded "not guilty by reason of insanity," yet it did not.

**{¶ 77}** Further, I disagree with the majority's reliance on *State v. G.K.*, 2022-Ohio-2858, to discount the precedence established by *Reiner*, *Z.J.*, *Schwartz*, and *Haney*.

26.

*G.K.* involved a situation where the defendant pleaded guilty to one count in an indictment in exchange for the State dismissing the remaining five counts. At issue was whether the records of the dismissed counts could be sealed. *Id.* at ¶ 1. The Ohio Supreme Court held that the language of R.C. 2953.52(A)(1) was clear on its face, and because the defendant was not "found not guilty of an offense" nor was he "named in a dismissed complaint, indictment, or information," he was not eligible to have his records sealed under the statute. *Id.* at ¶ 15. Specifically, the court identified that "[i]ndividual counts in the indictment were dismissed, but the indictment was not." *Id.* Although the majority notes that *Reiner*, *Z.J.*, *Schwartz*, and *Haney* were decided before *G.K.* in an oblique attempt to avoid their precedence, in my view *G.K.* simply has no bearing on the issue of whether R.C. 2953.33 applies to individuals who have been found not guilty by reason of insanity.

{¶ 78} Therefore, I dissent from the majority and would apply R.C. 2953.33 in this case.[2]

{¶ 79} To that end, I would find Johnson's first assignment of error well-taken and his second assignment of error not well-taken.

### I. R.C. 2953.33(B)(3)

{¶ 80} In his first assignment of error, Johnson argues that the trial court erred when it did not order his DNA specimens to be sealed. Relevant to that issue, R.C. 2953.33(B)(3) states,

---

[2] Given my view, I agree with the majority's decision to certify a conflict.

27.

[i]f the court determines after complying with division (B)(2)(a) of this section that the person was found not guilty in the case . . . the court shall issue an order to the superintendent of the bureau of criminal identification and investigation directing that the superintendent expunge or seal or cause to be sealed, as applicable, the official records in the case consisting of DNA specimens that are in the possession of the bureau and all DNA records and DNA profiles. The determinations and considerations described in divisions (B)(2)(b), (c), and (e) of this section do not apply with respect to a determination of the court described in this division.

{¶ 81} The statute does not provide for any discretion on the part of the trial court. Because Johnson was found not guilty, the trial court *shall* issue an order directing that the DNA specimens be sealed. R.C. 2953.33(B)(5) does contain a caveat, however, that "[a]ny DNA specimens, DNA records, and DNA profiles ordered to be sealed or expunged under this section shall not be sealed or expunged if the person with respect to whom the order applies is otherwise eligible to have DNA records or a DNA profile in the national DNA index system."

{¶ 82} Accordingly, I would find Johnson's first assignment of error well-taken and would remand the matter to the trial court to determine if Johnson was otherwise eligible to have DNA records in the national DNA index system, and if not, to order those records sealed.

## II. R.C. 2953.33(B)(4)

{¶ 83} In his second assignment of error, Johnson argues that the trial court abused its discretion when it declined to seal or expunge the records of his case. R.C. 2953.33(B)(4) provides, in relevant part,

[i]f the court determines, after complying with division (B)(2)(a) of this section, that the person was found not guilty in the case . . .; that no

28.

criminal proceedings are pending against the person; and the interests of the person in having the records pertaining to the case sealed or expunged, as applicable, are not outweighed by any legitimate governmental needs to maintain such records, . . . in addition to the order required under division (B)(3) of this section, the court shall issue an order directing that all official records pertaining to the case be sealed or expunged, as applicable, and that, except as provided in section 2953.34 of the Revised Code, the proceedings in the case be deemed not to have occurred.

{¶ 84} Here, Johnson was found not guilty and there are no criminal proceedings pending against him. Thus, the pertinent issue is whether his interests in having the records sealed or expunged are outweighed by any legitimate governmental needs to maintain such records.

{¶ 85} A trial court's determinations under R.C. 2953.33 are reviewed for an abuse of discretion. *State v. Fasnaugh*, 2023-Ohio-3539, ¶ 14 (6th Dist.), citing *State v. T.D.*, 2020-Ohio-3489, ¶ 10 (6th Dist.). An abuse of discretion connotes that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 86} The trial court in this case found that Johnson's interests were outweighed by the government's need to maintain the records. In particular, it found,

While [Johnson] has been law-abiding after his confinement ended, has maintained compliance with taking his medications and has gained employment while seeking a better job, it is clear, despite the NGRI finding, that [he] was not innocent of the offenses with which he was charged.

And while the court is edified by the strides [Johnson] has made in his life following his release form the Northwest Ohio Psychiatric Hospital ten years ago, the nature and gravity of the 2003 offenses weigh in favor of the state.

29.

{¶ 87} Testimony from the hearing revealed that Johnson has been employed as a dishwasher at Bob Evans for five years and also receives Social Security Disability. Johnson's interest is that he needs the records to be sealed so that he can apply to a particular school to pursue a career as a direct care worker in the health care field. Supporting his argument is the fact that he has been relatively stable and has made great strides in his schizophrenia diagnosis; he consistently receives his shots—even if he would like to eventually not have to take them—and he acknowledges his need to follow the directions of his doctors. Despite that, Johnson testified, however, that he still sees little spirits even if they do not bother him too much. Weighing in the State's favor is its interest in protecting the public in light of Johnson's violent, sexual conduct against the victim.

{¶ 88} Upon review, I cannot say that the trial court's decision was unreasonable, arbitrary, or unconscionable. The trial court heard the evidence, weighed the considerations, and came to a supportable conclusion. Therefore, I would hold that the trial court did not abuse its discretion when it denied Johnson's motion to seal the records of his case under R.C. 2953.33(B)(4).

{¶ 89} Accordingly, I would find Johnson's second assignment of error not well-taken.

### III. Conclusion

{¶ 90} In sum, I dissent from the majority and would hold that R.C. 2953.33 does apply to individuals who were found not guilty by reason of insanity. Applying that

30.

statute, I would hold that the trial court did not err when it denied Johnson's motion to seal the records of his case, but that it did err when it failed to consider and seal his DNA records. I would remand the matter to the trial court for it to determine under R.C. 2953.33(B)(5) if Johnson was otherwise eligible to have DNA records in the national DNA index system, and if not, to order those records sealed.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.