[Cite as *State v. Margiotti*, 2021-Ohio-1826.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-469 |
| v. | : | (M.C. No. 2019-CRB-11214) |
| Anthony Margiotti, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 27, 2021

**On brief:** *Zachary M. Klein*, City Attorney, *Melanie R. Tobias*, Deputy Chief of Staff-Prosecution, and *Orly Ahroni*, for appellee.

**On brief:** *Parks and Meade, L.L.C.*, and *Darren L. Meade*, for appellant.

APPEAL from the Franklin County Municipal Court

BROGAN, J.

{¶ 1} Defendant-appellant, Anthony Margiotti, was convicted on June 20, 2019 of three counts of direct criminal contempt in the Franklin County Municipal Court. Margiotti was sentenced to consecutive terms of 30 days on each contempt finding for a total of 90 days in jail. In a single assignment of error, Margiotti contends that his three separate convictions should have merged into a single conviction because the purported three acts of contempt all arose out of a single continuous course of conduct.

{¶ 2} The facts leading up to Margiotti's contemptuous conduct are as follows. On March 6, 2019, Margiotti pled guilty to a charge of disorderly conduct. Margiotti was sentenced to thirty days in jail, with six days credit for time served, and the balance

suspended upon terms of probation. Three revocations hearings were conducted on Margiotti's conviction for disorderly conduct. Margiotti subsequently was charged with criminal trespass and a hearing was conducted on all matters on June 20, 2019. Margiotti attended the revocation and pre-trial hearing on the new case without counsel. The court discussed the status of Margiotti's two cases, and Margiotti requested a continuance for 30 days to complete community service, which the court granted with an admonition: "Come back with that community service done or come back with a lawyer." (Tr. at 8.) The court then instructed Margiotti to be seated and wait to set the next court date. There was then a break in the proceedings.

{¶ 3}   Shortly thereafter, the court addressed Margiotti, who is labeled in this portion of the transcript as "Off-Camera Speaker." (Tr. at 9.) Margiotti's first statements are unintelligible, but the court's reaction to these statements was, "First of all, do not raise your voice at me and do not disrespect my bailiff. You got that?" to which Margiotti replied "Yeah." (Tr. at 10.) Margiotti was instructed by the court to "[s]ign the paperwork and leave before you go to jail. That simple. It ain't no other question about—." (Tr. at 10.) To this, Margiotti responded that he would sign the paperwork. The court then immediately advised Margiotti he had three seconds to sign the paperwork or he would be going to jail. The court counted down from three, during which time Margiotti did not sign the continuance, and the court ordered him to be taken into custody.

{¶ 4}   At this point, Margiotti stated, "All you dumb niggers running around here – [.]" (Tr. at 10.)

{¶ 5}   The following exchange then transpired:

The Court: Oh-hoh (noise), 30 days in jail.

[Defendant]: -- (unintelligible) and all they do is sit there and say fuckin' shit that they're told to say.

The Court: All right.

[Defendant]: Not even fuckin' educated.

The Court: Okay. Sounds like you're going to jail for 30 days, sir.

[Defendant]: It sounds like you're still a dumb fuckin' nigger.

The Court: And guess what? I'm still your lawyer (sic).

[Defendant]: I'm still a fuckin' --

The Court: I'm still your Judge.

[Defendant]: You're still my lawyer, bitch? Go fuck yourself, nigger.

The Court: Can I have tho --

[Defendant]: Is that what they tell you to say?

The Court: Can I have those files back, please?

Bailiff: Yes, Judge.

(Unintelligible conversation.)

(Tr. at 11.)

{¶ 6} Margiotti was shortly returned to the courtroom in custody, now with the presence of counsel appointed from the bench, Attorney Robert Beck, Jr. Margiotti was soon thereafter removed at the court's direction due to multiple interruptions, but such misbehavior apparently had no bearing on the court's ultimate finding of contempt. (*See* Tr. at 16.) Attorney Beck then discussed with the court having Margiotti assessed for competency. (Tr. at 13-14.) The following exchange took place after the request for psychological evaluation:

> The Court: Mr. Margiotti was here today. We had two cases. We had the pretrial, which was an open trespass. Yes. He's on probation to me for disorderly conduct. We had a conversation. There was an offer from the State to -- for 24 hours of community service to get that case dismissed.
>
> My rev, which I'm trying to inform you one, the only reason is -- the violation is the new case. * * * So prior to you getting involved -- Prior to all this happening, I gave him an opportunity to get another court date * * * to either hopefully talk to a lawyer or complete the community service that will resolve our rev. * * * So while that was going on, while that was happening, he did approach my bailiff trying to get the court date. * * * I did you show you the video, just for the record.
>
> [Attorney] Beck: Yes.

> The Court: You went back and saw it. The joys of technology. I -- Essentially, what happened was, he was trying to get another court date. He was, I felt, harassing my bailiff unnecessarily. I got involved, advised the Defendant to leave, and gave him an opportunity to leave because I felt he was being disruptive to the administration of my docket by not allowing my bailiff to move on to the next case. * * * He chose then to respond to me and continue being disruptive. * * * I mean, so the way I'm writing this entry is: The Court is finding the defendant in direct contempt * * * of court. The defendant directly impaired the Court's administration of the docket. * * * The Court witnessed the behavior, gave the defendant an opportunity to leave. Defendant responded by being disruptive, also using racial epithets toward me. He did that on three different occasions * * * according to the video. * * * Well, he did it again, obviously, but whatever. * * * I'm finding this will be three different -- contemptuous actions in violation of 2705.01. Defendant is sentenced to 90 days in jail, 30 days for each different action. And I am allowing the defendant that you -- through your -- Mr. Beck, I'm allowing you to reapproach in 30 days * * * to be considered for early release pursuant to 2705.08.

(Tr. at 14-17.) Trial counsel moved that the courtroom video of the incident be entered into the record as if played, which the trial court granted. (Tr. at 17-18.)

{¶ 7} Trial counsel then raised the argument for what is at issue in the present appeal:

> [Attorney] Beck: Your Honor, I would argue at this point in time that while, certainly, and -- And it's the Court's finding. Certainly some things that were very offensive, very polarizing, were said. This was one continuing course of conduct. This was one conversation between the Court and the defendant where, in the course of that conversation, the defendant said three to four pretty powerful and offensive, loaded things, things that certainly would be considered fighting words in some jurisdictions.
>
> However, Your Honor, as a continuing course of conduct, I don't believe those epithets were hurled with a separate animus. I don't believe -- I believe this is just one long, embarrassing string.

(Tr. at 18.)

The court responded to this argument as follows:

The Court: I appreciate the record. What I can say is the Supreme Court has found that, as a judge, I am in complete control of the courtroom.

[Attorney] Beck: Yes, sir.

The Court: Although there is a -- There are statutes out there that indicates I should give 30 days per violation. The reality is, the Supreme Court has held contempt in power is inherent in me --

[Attorney] Beck: Yes.

The Court: -- and I'm using that statute as guidelines. However, I don't have to.

(Tr. at 19.)

{¶ 8} In its journal entry, the trial court stated that it was finding Margiotti in direct contempt because the defendant directly impaired the court's administration of the docket, the court gave the defendant an opportunity to leave, and Margiotti responded by being disruptive and by using racial epithets (three times). The judge stated he found this to be three different contemptuous actions in violation of R.C. 2705.01 and sentenced the defendant to 90 days (30 days for each contemptuous action).

{¶ 9} The state acknowledges that criminal contempt is subject to the double jeopardy clause, which prohibits multiple punishments for the same offense. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 10. That protection is codified in R.C. 2941.25, the "multiple counts" statute. R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 10} "R.C. 2941.25(A) allows only a single conviction for conduct that constitutes 'allied offenses of similar import.' " *Ruff* at ¶ 13. "When the defendant's conduct constitutes

a single offense, the defendant may be convicted and punished only for that offense." *Id.* at ¶ 24. An appellate applies a de novo standard of review in reviewing a trial court's determination as to whether offenses are subject to merger under R.C. 2941.25. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28.

{¶ 11} The state argues that at least three acts of contempt were committed separately for purposes of R.C. 2941.25(B). According to the state, the first act of contempt was completed when Margiotti was taken into custody for not signing the court's paperwork, harassing the bailiff, and refusing to leave the courtroom. The state argues that the second act of contempt began when Margiotti uttered the first racial epithet after he was taken into custody, which was directed at court personnel. (Tr. at 10-11.) The state argues that, at minimum, a third act of contempt occurred when Margiotti again disrupted the court's proceedings by directing racial epithets to the judge. (Tr. at 11.)

{¶ 12} The state argues that each offense was also dissimilar in import or significance in that Margiotti committed each act with a separate animus or motivation. For example, as to the first act of contempt, the state contends that Margiotti aimed to not comply with the court's orders, which both harassed the bailiff and caused disruption to the court's docket. The second act of contempt was, in the state's view, Margiotti's attempt to disparage court personnel and the court at large, while the third act of contempt was directed at personally insulting and attempting to demean an African American judge.

{¶ 13} Margiotti relies on two Eighth District Court of Appeals is support of his argument that the trial court's contempt findings should have been merged for sentencing purposes. *See State v. Goldsmith*, 8th Dist. No. 90617, 2008-Ohio-5990 and *State v. Grayson*, 8th Dist. No. 105081, 2017-Ohio-7175.

{¶ 14} In *Goldsmith*, the court held that the defendant's two convictions for felonious assault against one victim must be merged under R.C. 2941.25, because the defendant "fired multiple shots at one victim in rapid succession and did not have a separate animus for each count of felonious assault." *Id.* at ¶ 33-37. Similarly, in *Grayson*, the court held that the defendant's four convictions for improperly discharging a firearm into a habitation should have been merged because the defendant fired six shots into the house and did not have a separate animus as to each shot.

{¶ 15} The state argues these cases are distinguishable because Margiotti did not commit his acts of contempt in rapid succession and each act was committed separately or with a separate animus. To the state, the fact that each act was committed in close proximity in time is of no consequence in this case. *See State v. Williams*, 12th Dist. No. CA2018-02-030, 2018-Ohio-4261, ¶ 13, quoting *State v. Fields*, 12th Dist. No. CA2014-03-025, 2015-Ohio-1345, ¶ 18 (" 'if one offense is completed before the other begins, the offenses are considered separately for sentencing purposes even though the two offenses may have been committed in close proximity in time' "); *see State v. Turner*, 2nd Dist. No. 24421, 2011-Ohio-6714, ¶ 24 ("[b]ecause one offense was complete before the other offense occurred, the two offenses were committed separately for purposes of R.C. 2941.25(B), notwithstanding their proximity in time").

{¶ 16} Margiotti argues that all the events that resulted in his three contempt charges happened over 20 seconds. Although the length of time between criminal conduct is relevant in the merger analysis, it is not always dispositive. If a defendant shot three different individuals over 20 seconds, the 3 assault charges would not be merged for conviction purposes. Here, Margiotti was found in contempt by the court for harassing the court's bailiff and disrupting the court's docket, directing racial epithets toward court personnel, and finally racial epithets to the judge. This court agrees that Margiotti's offenses were committed separately or with a separate animus as to each. The appellant's assignment of error is overruled. The judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

KLATT and BEATTY BLUNT, JJ., concur.

BROGAN, J., retired, of the Second Appellate District, assigned to active duty under authority of Ohio Constitution, Article IV, Section 6(C).

_____