[Cite as *State v. Phillips*, 2025-Ohio-1857.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Andrew J. King, P.J. |
| Plaintiff - Appellee | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. Kevin W. Popham, J. |
| -vs- | : | |
| | : | |
| NICHOLAS PHILLIPS, | : | Case No. 24-COA-026 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Ashland County
                            Court of Common Pleas, Case No.
                            23-CRI-227

JUDGMENT:                   Affirmed

DATE OF JUDGMENT:           May 22, 2025

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

ANDRES R. PEREZ                           BRIAN A. SMITH
Ashland Prosecuting Attorney's Office     Brian A. Smith Law Firm, LLC
110 Cottage St., 3rd Floor                123 South Miller Rd., Suite 250
Ashland, OH  44805                        Fairlawn, OH  44333

*Montgomery, J.*

{¶1} Defendant-Appellant, Nicholas Phillips ("Appellant"), appeals from the decision of the Ashland County Court of Common Pleas finding him guilty of attempted kidnapping and domestic violence and imposing consecutive sentences for a total of 7 1/2 to 10 1/2 years in prison. For the reasons set forth below, we affirm.

## STATEMENT OF THE CASE AND FACTS

{¶2} On October 13, 2023, Appellant was indicted on one count of Kidnapping, a first-degree felony in violation of R.C. 2905.01(B)(2), (C)(1); one count of Domestic Violence, a fourth-degree felony and violation of R.C. 2919.25(A), (D)(3); one count of Strangulation, a fourth-degree felony and violation of R.C. 2903.18(B)(3), ( C)(3); and one count of Strangulation, a third-degree felony and violation of R.C. 2903.18(B)(2), (C)(2). Appellant initially pled not guilty. On May 23, 2024, Appellant changed his plea to guilty to Attempted Kidnapping and Domestic Violence (as charged).

{¶3} On June 21, 2024, the trial court held a sentencing hearing and allowed statements from Appellant's trial counsel, the victim, and the assistant prosecutor. In its Sentencing Judgment Entry, the Court states, "[t]he Court gave defense counsel an opportunity to speak and present mitigation on the Defendant's behalf, personally addressed the Defendant, and provided the Defendant an opportunity for allocution." The court reviewed the presentence investigation report ('PSI"), weighed all statements in mitigation, and ultimately sentenced Appellant to an indefinite sentence of 6-9 years in prison for Attempted Kidnapping, and the maximum possible sentence of 18 months in prison for Domestic Violence. The trial court ordered the sentences be served

consecutively, for a total aggregate sentence for both offenses of 7 1/2 to 10 1/2 years in prison. The trial court credited Appellant with 228 days served.

{¶4} The record reveals the following events. On September 8, 2023, the victim was walking her dog outside her apartment when Appellant arrived and the two began arguing. The argument continued inside the apartment. Appellant pushed the victim into a bedroom closet, cornered her, and spit in her face. The victim got herself out of the closet and ran into the living room. Appellant followed her and straddled the victim on the couch while pushing his knees into her chest. Appellant put his hands around her throat, strangling her. Thereafter, Appellant put pressure on her trachea with his thumbs and kneed her repeatedly in the chest as the victim struggled to breathe. At some point, the victim was able to kick Appellant off, and she ran out of the apartment. Appellant followed and had the victim's phone but would not let her have it back to call 911. A neighbor came out, and the victim and neighbor had a confrontation with Appellant, but they eventually parted ways. The victim took photographs of her injuries.

{¶5} The next day, the victim went to the emergency room because she continued to have trouble breathing. At that point, the victim reported the crime to the Ashland Police Department and spoke to Officer Brian Kunzen. Officer Kunzen testified at the temporary protection order ("TPO") hearing and described the victim's injuries. See *TPO Tr.*, pp. 15-17, Sept. 12, 2023. The victim suffered bruising and red marks, as well as a sternum injury and a lung injury. At the sentencing hearing on June 21, 2024, the victim stated the following:

> I just want to make it aware to the Court, Mr. Phillips had no intention of me
>
> surviving his attack. When I was able to breathe, when he was strangulating

me, I told him he was going to break my neck. At that point he removed his hands from my neck, he put his thumbs in my throat and repeatedly kneed me in the chest causing massive damage, excuse me, to my sternum, my lungs, my chest wall, and my rib cage. His full intent was to end my life via by crushing me or strangling me to death.

Mr. Phillips caused severe injuries, but my physical injuries have healed completely. But he broke me mentally from the * * * amount of abuse. * * * I will never be the same. * * *

*Tr.* at pp. 6-7.

## ASSIGNMENTS OF ERROR

{¶6} "I. THE TRIAL COURT COMMITTED PLAIN ERROR IN FAILING TO MERGE AMENDED COUNT ONE, ATTEMPTED KIDNAPPING, AND COUNT TWO, DOMESTIC VIOLENCE, FOR PURPOSES OF SENTENCING AS ALLIED OFFENSES OF SIMILAR IMPORT PURSUANT TO R.C. 2941.25, IN VIOLATION OF APPELLANT'S RIGHT AGAINST DOUBLE JEOPARDY UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

{¶7} "II. THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO SEEK THE MERGER OF AMENDED COUNT ONE, ATTEMPTED KIDNAPPING, AND COUNT TWO, DOMESTIC VIOLENCE, FOR PURPOSES OF SENTENCING, AS ALLIED OFFENSES OF SIMILAR IMPORT PURSUANT TO R.C. 2941.25, CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

{¶8} "III. THE TRIAL COURT COMMITTED PLAIN ERROR IN IMPOSING CONSECUTIVE SENTENCES ON APPELLANT, BECAUSE ITS FINDINGS UNDER R.C. 2929.14(C)(4) WERE NOT SUPPORTED BY THE RECORD."

## ALLIED OFFENSES OF SIMILAR IMPORT

{¶9} In the first assignment of error, Appellant claims the trial court erred in failing to merge the offenses of attempted kidnapping and domestic violence. The Double

Jeopardy Clause of the Fifth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution prohibit successive prosecutions and multiple punishments for the same offense. *State v. Pendleton,* 2020-Ohio-6833, ¶ 18, citing *State v. Ruff,* 2015-Ohio-995, ¶ 10. "Regarding multiple punishments for the same offense, the Double Jeopardy Clause prohibits 'the sentencing court from prescribing greater punishment than the legislature intended.' " *Id.,* quoting *Missouri v. Hunter,* 459 U.S. 359, 366 (1983).

**{¶10}** "R.C. 2941.25 'codifies the protections of the Double Jeopardy Clause * * * which prohibits multiple punishments for the same offense.' " *State v. Thorpe,* 2024-Ohio-1957, ¶ 15 (5th Dist.), citing *State v. Williams,* 2012-Ohio-5699, citing *State v. Underwood,* 2010-Ohio-1; *State v. Tolliver*, 2020-Ohio-3121, ¶ 54 (8th Dist.) (Ohio's allied offenses statute, codifies Ohio's double jeopardy protection). R.C. 2941.25 provides:

(A)   Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B)   Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶11}** The issue of "allied offenses of similar import" has been litigated and discussed in several Ohio Supreme Court cases over the years. Most recently, in *Ruff,* the Ohio Supreme Court set forth the following rules in the syllabus as follows:

1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.

2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

*State v. Ruff,* 2015-Ohio-995, paragraphs 1-3 of syllabus.

**{¶12}** In determining whether offenses are of similar import within the meaning of R.C. 2941.25, courts must ask three questions: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? And (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions" and the offenses do not merge. *State v. Earley,* 2015-Ohio-4615, ¶12, quoting *Ruff,* ¶31.

**{¶13}** Further, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct and an offense may be committed in a variety of ways. *Ruff,* ¶¶ 26, 30. The analysis may be difficult and may lead to varying results for the same set of offenses in different cases. *Id.* at ¶ 32. But

different results are permissible, given that the statute instructs courts to examine a defendant's conduct — an inherently subjective determination. *Id.; State v. Bailey,* 2022-Ohio-4407, ¶¶ 6, 11 (because merger involves factual analysis, it can "lead to exceedingly fine distinctions", making it difficult to demonstrate plain or obvious error; thus, any error in trial court's failure to merge kidnapping and rape counts was not obvious error, and did not constitute plain error).

{¶14} Offenses are dissimilar in import or significance within the meaning of R.C. 2941.25(B), "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. "The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import." *Id.* Or, when one offense is completed prior to the completion of another offense during the defendant's course of conduct, those offenses are separate acts. *State v. Woodard*, 2022-Ohio-3081, ¶ 38 (2d Dist.), quoting *State v. Mooty*, 2014-Ohio-733, ¶ 49 (2d Dist.); *State v. Thomas,* 2023-Ohio-3148, ¶ 42 (8th Dist.). Thus, offenses are committed separately within the meaning of R.C. 2941.25(B) if, "one offense was complete before the other offense occurred, * * * notwithstanding their proximity in time and that one [offense] was committed in order to commit the other". *State v. Turner*, 2011-Ohio-6714, ¶ 24 (2d Dist.); *accord State v. Williams*, 2018-Ohio-4261, ¶ 13 (12th Dist.); *State v. Margiotti*, 2021-Ohio-1826, ¶ 15-16 (10th Dist.). Finally, for purposes of R.C. 2941.25(B), animus has been defined as the defendant's purpose of immediate motive. *Id.* at ¶ 43.

{¶15} Generally, an appellate court reviews *de novo* whether certain offenses should be merged as allied offenses under R.C. 2941.25 prior to sentencing. *Bailey*,

2022-Ohio-4407, ¶ 6, citing *State v. Williams*, 2012-Ohio-5699, ¶ 1. However, " 'the failure to raise arguments related to merger of allied offenses at the time of sentencing forfeits all but plain error.' " *Bailey*, ¶ 7, quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 28. Here, because Appellant did not object to the trial court's alleged failure to merge allied offenses of similar import at the time of sentencing, he forfeited all but plain error.

{¶16} Under Crim. R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The trial court's error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. Thus, to prevail under the plain-error doctrine, the appellant must establish that, "an error occurred, that the error was obvious, and that there is 'a reasonable *probability* that the error resulted in prejudice,' meaning that the error affected the outcome of the trial". (Emphasis added in *Rogers*.) *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, quoting *Rogers*, ¶ 22; *see also State v. Wilks*, 2018-Ohio-1562, ¶ 52.

{¶17} As the Ohio Supreme Court stated in *Rogers*, supra:

An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same

conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

*Rogers*, ¶ 3, cited in *Patton*, supra, ¶ 12; see also *State v. Evans*, 2023-Ohio-1357, ¶ 21 (5th Dist.).

**{¶18}** As stated, Appellant contends attempted kidnapping and domestic violence should have been merged for sentencing purposes, arguing that both offenses were part of one continuous course of conduct and the attempted kidnapping was merely incidental to the domestic violence. We disagree.

**{¶19}** Appellant pled guilty to attempted kidnapping in violation of R.C. 2905.01 (B)(2) and R.C. 2905.01(C)(1), a felony of the second degree. Subsection (B)(2) provides that, "(B) No person, by force, threat, or deception, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim * * * (2) Restrain another of the other person's liberty." Appellant also pled guilty to domestic violence in violation of R.C. 2919.25(A) and 2919.25(D)(3), a felony of the fourth degree. R.C. 2919.25(A) states, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

**{¶20}** Although the actual elements of the specific offenses are not dispositive, they do provide insight into the question of "import," meaning the consequence or effect of the offenses in question. Here, the hallmark of kidnapping or attempted kidnapping involves restraining the other person's liberty by force, threat or deception. The hallmark of domestic violence is knowingly causing or attempting to cause physical harm to a family or household member. The import of these two offenses is distinct and dissimilar.

Without question, one offense can be committed without the commission of the other. Moreover, the attempted kidnapping occurred separately from the significant domestic violence. The kidnapping occurred when Appellant pushed the victim into a closet, restrained her for some time, and spit in her face. The victim was able to get out of the closet and retreat to the living room. Appellant followed her, straddled her, struck her and strangled her, causing significant injury – both mental and physical.

{¶21} Under the facts of this case, we conclude the attempted kidnapping occurred separate from the domestic violence. Appellant argues at length that the victim did not suffer separate identifiable harm from the respective offenses. However, the victim testified that the harm she suffered was both physical and emotional, and that such harm will last a lifetime. Simply because Appellant does not *believe* that separate and identifiable harm resulted from both offenses is inconsequential. Regardless, the *Ruff* test requires the court to analyze the offender's conduct and ask three questions and if even one is answered in the affirmative, the offenses do not merge. Thus, Appellant has not demonstrated plain error in the trial court's failure to merge the offenses for sentencing purposes. Appellant's first assignment of error is overruled.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

{¶22} In the second assignment of error, Appellant claims his counsel was ineffective in failing to request merger at sentencing. The standard of review for ineffective assistance of counsel was set forth in the seminal case of *Strickland v. Washington,* 466 U.S. 668 (1984), and was discussed by this Court in *Mansfield v. Studer,* 2012-Ohio-4840 (5th Dist.):

A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, (1993); *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989). To warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance,* 556 U.S. 111 (2009).

In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant", the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances". *Strickland* at 689. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential."

*Strickland* at 689; *Studer,* at ¶¶ 58-61.

**{¶23}** Thus, to prevail on an ineffective assistance of counsel argument, appellant must establish **two** prongs: first, that his trial counsel's performance fell below an objective standard of reasonable representation involving a "substantial violation" of an essential duty to appellant. *Studer,* at ¶¶ 58-61. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id.*; *Strickland* at 687. Second, appellant must

demonstrate actual prejudice by such alleged ineffectiveness. In other words, there must be a reasonable probability that *but for* counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland,* supra, at 691-696.

{¶24} An appellate court's review of trial counsel's actions and decisions is highly deferential and strategic or tactical decisions will not form a basis for an ineffective assistance of counsel claim. *Id.* at 689; *State v. Clayton*, 62 Ohio St.2d 45, 48-49 (1980); *State v. Mason*, 82 Ohio St.3d 144, 157-58 (1998) (stating that an appellate court may not second guess a trial counsel's strategy decisions). Further, in determining a claim of ineffective assistance of counsel, our review is limited to the record before us. *State v. McCauley*, 2017-Ohio-4373, ¶ 21 (5th Dist.), citing *State v. Prophet*, 2015-Ohio-4997, ¶ 32 (10th Dist.).

{¶25} As set forth above, we conclude there was no error in the trial court's failure to merge the offenses of attempted kidnapping and domestic violence. The offenses are not allied offenses of similar import and were committed separately. As a result, Appellant cannot establish either prong required by the *Strickland* test to support a claim of ineffective assistance of counsel. Simply stated, Appellant's trial counsel's performance did not fall below an objective standard of reasonable representation involving a "substantial violation" of an essential duty to Appellant and there has been no actual prejudice by counsel's alleged ineffectiveness. Accordingly, Appellant's second assignment of error is overruled.

## CONSECUTIVE SENTENCES

**{¶26}** In Appellant's third assignment of error, Appellant argues the trial court committed plain error in imposing consecutive sentences because its findings under RC. 2929.14(C)(4) were "not supported by the record". Again, we disagree with Appellant.

**{¶27}** The appropriate standard of review on appeals challenging a sentence is set forth in R.C. 2953.08(G)(2). *State v. Bonnell,* 2014-Ohio-3177, ¶ 9. An appellate court may vacate a sentence and/or remand a matter to the trial court when a sentence does not comport with sentencing statutes, or when the sentence is otherwise contrary to law. *Bonnell*, ¶ 9. When reviewing a criminal sentence, R.C. 2953.08(F) requires a court to examine the entire record, including any oral or written statements and presentence-investigation reports. *State v. Carbaugh*, 2023-Ohio-1269, ¶ 25 (5th Dist.) (citations omitted).[1]

**{¶28}** In turn, R.C. 2929.14(C)(4) sets forth the specific findings a trial court must make on the record when imposing any consecutive sentence. R.C. 2929.14(C)(4) expressly provides:

> If multiple prison terms are imposed on an offender for convictions of
>
> multiple offenses, the court may require the offender to serve the prison

---

[1] R.C. 2953.08(G)(2) provides as follows:
The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant; (b) That the sentence is otherwise contrary to law.

terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds **any** of the following:

(a)     The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b)     At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)     The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶29}** Thus, before a trial court may impose consecutive sentences, it must make three findings: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of the three specific findings set forth in (a)-(c) apply.  *State v. Carmel,* 2014-Ohio-1209, ¶ 6 (9th Dist.); *Carbaugh*, ¶ 32 (noting that

the first step in consecutive-sentence review is to ensure findings under R.C. 2929.14(C)(4) have been made—i.e., the first and second findings regarding necessity and proportionality, as well as the third required finding under R.C. 2929.14(C)(4)(a), (b), or (c)).

{¶30} In *Bonnell,* the Ohio Supreme Court determined that when imposing consecutive sentences, "a trial court must state the required findings as part of the sentencing hearing, and by doing so it affords notice to the offender and to defense counsel". *State v. Bonnell*, 2014-Ohio-3177, ¶ 29; Crim.R. 32(A)(4). And because a court speaks through its journal entries, "the court should also incorporate its statutory findings into the sentencing entry". *Bonnell,* ¶ 29, citing *State v. Brooke,* 2007-Ohio-1533, ¶ 47.

{¶31} The court does not need to state reasons for the findings, the findings alone are sufficient. Further, a word-for-word recitation of the language of the statute is not required. *Bonnell*, ¶¶ 29-30. If the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record supports the findings, then consecutive sentences should be upheld. *Id.*; *State v. Wade*, 2024-Ohio-4556 (5th Dist.). Here, the trial court properly followed the mandates of R.C. 2929.14(C)(4). It stated the necessary findings on the record, finding that all three subsections of (C)(4)(a) – (c) applied, and subsequently incorporated those findings into the Sentencing Judgment Entry. When announcing Appellant's consecutive sentences, the court explicitly stated:

> The Court does look at this as a serious offense. There is an allegation of choking with struggling to breathe. The victim was close to losing consciousness. Certainly, that kind of force is incredibly close to that of being lethal force. * * * I agree with the victim that you are a risk to her and

to society in general. * * * I am finding consecutive sentences are necessary and appropriate to punish the offender and protect the public from future crime and are not disproportionate to the seriousness of the conduct or the danger posed by the Defendant and one or more of the offenses were committed while you were awaiting trial and on community control. Two or more offenses were part of one or more course of conduct and the harm caused is so great or unusual that a single prison term would not adequately reflect the seriousness of the conduct and that your criminal history demonstrates that consecutive sentences are necessary to protect the public.

*Sent. Tr.*, pp. 11-13.

**{¶32}** There is no dispute that Appellant committed these offenses while on community control and that Appellant has significant prior criminal history – including prison terms and community control for domestic violence. The court stated, "[b]y my count, Mr. Phillips, you have six prior felonies, all of them resulted in a prison sentence or resulted in community control, which was violated and then resulted in a prison sentence." *Sent. Tr.*, pp. 10-11. "While you are on bond in this case it was revoked. Looks like you made it all of four months on probation with domestic violence before you committed a new one." *Sent. Tr.* at p. 11. The court considered the severe and substantial domestic violence that occurred in this case and even noted that while the case was proceeding, Appellant "continued to make threats about killing the victim so that the case went away". *Sent. Tr.* pp. 10-11. After a thorough review of the record, we conclude the trial court's findings to support consecutive sentences are clearly supported

by the record.  The court was thorough and thoughtful in Appellant's sentencing.  As such, Appellant's third assignment of error is overruled.

## CONCLUSION

{¶33}  Based on the foregoing, Appellant's first, second, and third assignments of error are overruled.  The judgment of the Ashland County Court of Common Pleas is affirmed in all respects.

By: Montgomery, J.

King, P.J. and

Popham, J. concur.